# EXHIBIT 2

# DECLARATION AND EXHIBITS OF HANS STRUZYNA

## DECLARATION OF HANS STRUZYNA

I, Hans Struzyna, being legally fit and qualified to testify in a court of law, and having personal knowledge of the facts contained herein, do hereby declare under penalty of perjury (28 U.S.C. § 1746) as follows:

1. I am 33 years old and a resident of Alameda, California.

2. I first learned of an investment opportunity in MJF Holdings from Jordan Spears at Quest Education ("Quest"). I first came into contact with Quest in late 2019.

3. I spoke with Michael French about the investment opportunity. Mr. French told me that MJF Holdings used investment funds to make short term loans to small businesses.

4. He offered me the opportunity to sign a one year promissory note. In return for my investment, I would receive 12% annual interest. Mr. French told me that it was MJF Holdings' goal to turn the money two or three times a year and that he would make the spread between what the money earned and what MJF Holdings owed on the promissory note.

5. Mr. French told me that he had a track record of success and that I should talk to Mr. Spears about his historical performance. Mr. Spears told me that other individuals who worked with Quest had invested with Mr. French and that those individuals had received timely interest and principal payments.

6. Prior to my investing with MJF Holdings, neither Mr. French nor anyone associated with Quest told me that Quest received a referral fee on my investment.

7. Prior to my investing with MJF Holdings, neither Mr. French nor anyone associated with Quest inquired about my net income or my net worth.

8. I made an initial investment of $14,600 from my self-directed IRA on May 1, 2020. Pursuant to the terms of the promissory note, I was to receive quarterly interest payments with the final interest payment and principal to be paid on the first anniversary of the note. I received all interest and principal for this investment.

9. I made a second investment of $16,000 from my self-directed IRA on January 22, 2021. Pursuant to the terms of the promissory note, I was to receive quarterly interest payments with the final interest payment and principal to be paid on the first anniversary of the note. I received all interest and principal for this investment.

10. Before my second investment, Mr. French told me that MJF Holdings' strategy had changed as a result of the Covid pandemic. Specifically, he said that MJF Holdings was making loans to "Covid proof" businesses that provided essential services, like hospitals and grocery stores.

11. I made a third investment of $11,500 from my self-directed IRA on March 4, 2021. Pursuant to the terms of the promissory note, I was to receive quarterly interest

payments with the final interest payment and principal to be paid on the first anniversary of the note. I received all interest and principal for this investment.

12. I made a fourth investment of $16,000 from my self-directed IRA on June 23, 2021.

13. Pursuant to the terms of the promissory note, I was to receive quarterly interest payments with the final interest payment and principal to be paid on the first anniversary of the note. I received all four interest payments on schedule, with the last payment made on August 17, 2022 in the amount of $480. The final principal payment was due at the same time, but I have not received it.

14. I made a fifth investment of $60,500 from my self-directed IRA on March 3, 2022. A true and correct copy of the paperwork I completed to make this investment is attached hereto as Exhibit A.

15. Pursuant to the terms of the promissory note, I was to receive quarterly interest payments with the final interest payment and principal to be paid on the first anniversary of the note. I received the first two interest payments on schedule, but have not received the third interest payment, which would have been due on approximately December 3, 2022. The final interest payment and principal was due on March 3, 2023.

16. Mr. French never told me that the proceeds of my investments would be used for any purposes other than to make loans to small businesses.

17. Mr. French never sought my permission to use the proceeds of my investments for any purpose other than to make loans to small businesses.

18. I received an email from MJF Holdings on August 31, 2022. A true and correct copy of that email is attached hereto as Exhibit B. The August 31, 2022 email is the last time I heard from Mr. French.

19. In January, 2023, I spoke with Jordan Spears at Quest Education about my investment in MJF Holdings. Mr. Spears told me that Mr. French was no longer responding to his communications and that Mr. French had not participated in his monthly call with Quest Education since September 2022.

I declare under penalties of perjury that the foregoing is true and correct. Declared and executed this __17th__ day of March, 2023.

_____
Hans Struzyna


**PROVIDENT TRUST GROUP**
an Ascensus® company

VIP Services: (888) 855-9856 | info@trustprovident.com
8880 W. Sunset Rd., Suite 250, Las Vegas, NV 89148

# Direction of Investment

[CLEAR]  [PRINT]

## Section 1 — Account Owner Information

| Title | First Name | MI | Last Name |
|---|---|---|---|
|  | Hanschristopher |  | Struzyna |

Email: ███████@gmail.com
Last Four Digits of Social Security Number: 006-7
Account Number: ███308

## Section 2 — Processing Options

If you would like expedited processing, please select one of the options below. If no option is selected, "Normal Processing" will apply. Processing fees will be paid from the cash available in your account unless you indicate otherwise. See current Fee Schedule for applicable fees.

For "Next-Day" or "Same-Day" Service, all documents must be received, and in good order, by 10 a.m. PST.

- [x] **Normal Processing** — Processed within three business days.
- [ ] **Next-Day Service** — Processed by 4 p.m. PST next business day.
- [ ] **Same-Day Service** — Processed within the same day.

☐ I elect to pay the fees related to this transaction with the credit card I have on file. (If you do **NOT** have a credit card on file, please add a credit card to your online profile. If no credit card is on file, fees will be paid from the cash in your account.)

## Section 3 — Asset Type to Purchase

Select the type of asset you would like to purchase and review the associated guidelines. Please note the documents that are required for each investment type. Please refer to the current Fee Schedule for any additional fees that may apply.

- [ ] **Real Estate** — Supply all documents associated with the purchase of real estate (e.g., Purchase Agreement, Preliminary Title Report, Deed, Lease Agreements) as well as a signed Property Manager Agreement or Property Manager Release Agreement.
- [ ] **Limited Liability Corporation (LLC)** — Supply a copy of Tax ID, Articles of Organization, Operating Agreement signed by Members, and Subscription Agreement.
- [x] **Promissory Note/Mortgage** — Supply a copy of the Promissory Note/Mortgage, Loan Servicer Agreement or Loan Servicer Release Agreement, and Security interest (e.g. Deed of Trust, Deed of Mortgage, Security Agreement) if secured. If no security interest exists, supply a copy of the signed note with the Borrower's signature notarized.
- [ ] **Limited Partnership (LP)** — Supply a copy of Tax ID, Certificate of Limited Partnership, Limited Partnership Agreement signed by Partners, and Subscription Agreement.
- [ ] **C-Corporation/Private Stock** — Supply a copy of Tax ID, Articles of Incorporation, By-Laws, and Subscription Agreement. All original stock certificates must be physically held by the Custodian.
- [ ] **Other** (e.g., Private Placement Memorandum (PPM), Raw Land, Tax Liens)
  Description of Asset: _____
  Supply a copy of the purchase documents.

### Titling of Investments

Because your account is considered to be the legal owner of your investments, all documents must reflect this ownership. Failure to title the asset correctly may cause delays and/or tax consequences. The correct titling for all investment documents should be as follows:

"Provident Trust Group, LLC FBO: [your name and account type]"
*Example: Provident Trust Group, LLC FBO: John Doe Roth IRA*

**EXHIBIT A**

## Section 4 — Investment Contact Information

*Please include contact information for the investment you are making.*

☐ Check here if this information is included on your investment documents.

**Name** *(Company or Individual)*
MJF Holdings, LLC

**Address:** PO Box 840  **City:** Pendleton  **State:** SC  **Zip:** 29670

**Email:** french@mjfcapital.com

## Section 5 — Documents to Process

*Please list the documents you require us, as the Custodian, to sign on your behalf:*

**Document 1:**
**Document 2:**

**Document Handling**
A copy of the signed investment documents will be scanned and emailed to you in accordance with our document handling policy. Please refer to the Investment Documentation section of your account's Custodial Agreement and Disclosures for more information about how we store your documents. If you would like us to mail the original documents listed above to you or a third party, please indicate so below.

☐ I would like to mail the documents listed above to the following individual/address. *See current Fee Schedule for applicable fees.*

**Attention to:**
**Additional Instructions/Notes:**
**Address:**  **City:**  **State:**  **Zip:**

## Section 6 — Funding and Instruction

*All accounts are required to maintain a minimum cash balance of $500.00. If your request would drop your balance below this amount, your request may not be processed.*

**Amount of funds to send** $ 60,500.00   **Ownership Percent of Investment** _____ %

☐ **Option 1:** Mail a check to the following payee. *See current Fee Schedule for applicable fees.*   **Initial here:** _____

**Payee Name:**
**Payee Tax ID Number:**
**Address:**  **City:**  **State:**  **Zip:**

**Check Delivery Options:** ☐ Regular Mail  ☐ Priority Mail  ☐ Overnight Mail
**Please note:** *Overnight mail cannot be delivered to a P.O. Box. If selecting this option, a street address must be provided.*

☑ **Option 2:** Wire or ACH funds directly to a payee's bank. *See current Fee Schedule for applicable fees.*  **Initial here:** HS

*If the ABA routing number provided accepts both wire and ACH transactions and the box below is not checked, funds will be sent as a wire. If the ABA routing number provided is not for a wire account, funds will be sent as an ACH.*

☑ I have attached separate wire instructions   HS  **Initial here**

*If submitting separate wire instructions, initial above and sign instructions before submitting.*

**Bank Name:**
**Payee Name (On bank account):**
**Payee Tax ID Number:**
**Payee Address:**  **City:**  **State:**  **Zip:**
**Account Number:**  ☐ Checking  ☐ Savings   **ABA Routing Number:**  ☐ Wire  ☐ ACH

| Section 7 | Account Owner Agreement and Authorization |

By signing below, I represent that 1) this transaction will not violate the prohibited transaction rules under IRC Section 4975, 2) I will not personally benefit from this investment while it is held in my account, and 3) this transaction does not involve a disqualified person(s) as defined by IRC Section 4975(e)(2). I understand that the Custodian is a passive custodian and does not determine whether investments violate IRS prohibited transaction rules.

**Important: Please read before signing**

My account is self-directed and I, alone, am responsible for the selection, due diligence, management, review, and retention of all investments in my account. I agree that the Custodian, is not a "fiduciary" for my account, as the term is defined in the Internal Revenue Code, ERISA, or any other applicable federal, state or local laws. I understand and acknowledge that by directing the Custodian to execute any investment documents on behalf of my account, any obligations, declarations, duties, responsibilities, or liabilities contained in such investment documents strictly pertain to me, as the account owner, and shall not apply to the Custodian in any capacity, as the Custodian is solely the passive, directed custodian for my account and acts only according to my written instruction. I acknowledge and confirm that I have received, read, and understand each of the disclosures for my account(s) and direction(s) of investment, and consent and agree to the terms and condition contained therein.

By signing below, I hereby direct the Custodian, in its passive capacity, to enact this transaction for my account by signing on behalf of my account where indicated in the investment documents and hereby release, indemnify, and agree to hold harmless and defend the Custodian in the event that this transaction violates any federal or state law or regulation, results in litigation, or otherwise results in a disqualification, penalty, fine, or tax imposed upon me, my account, or the Custodian.

X _____  Hanschristopher Struzyna _____  3/18/22
Account Owner Signature              Account Owner Name (Please type or print)           Date



**Congratulations! You are now able to submit your completed request.**

Before you submit this form please review all completed information prior to signing. When ready, mail, email, or fax this completed form to:

**Mail to:** Provident Trust Group
8880 W. Sunset Rd., Suite 250
Las Vegas, NV 89148

**Email to:** investments@trustprovident.com

**Fax to:** (702) 253-7565



# Loan Servicing Waiver

**VIP Services:** (888) 855-9856 | info@trustprovident.com
8880 W. Sunset Rd., Suite 250, Las Vegas, NV 89148

CLEAR  PRINT

## Section 1 — Recipient Information

**First Name:** Hanschristopher
**MI:**
**Last Name:** Struzyna

**Email:** ▇▇▇▇@gmail.com
**Last Four Digits of Social Security Number:** 0067
**Account Number:** 1308

## Section 2 — Borrower Information

**Borrower's First and Last Name or Entity Name:** MJF Holdings, LLC

**Date of Note:**
**Amount of Note:** $60,500.00

## Section 3 — Waiver

I am the owner of the account listed above, which owns a promissory note(s) on my behalf. I understand that the Custodian of my account has no authority to choose, administer, or otherwise exercise discretion over the assets in my account without my permission. I agree that the Custodian will not act as a loan servicer with respect to the notes that my account has (or will) acquire. Further, the Custodian normally requires me to hire a third party to act as loan servicer for any promissory notes held in my account. I acknowledge and agree that the Custodian will allow me to forgo this requirement in consideration for executing this waiver and release of liability and for abiding by the terms of this waiver.

I understand the following terms and I agree to them.

1) I will arrange to fulfill the duties normally undertaken by a professional loan servicer. These duties include, among other things,
   a. Documenting the provisions of the loan repayment, including the loan's term, interest rate, payment intervals, late payment fees, place of payment, and default rules;
   b. Collecting and tracking loan payments and timely remitting such payments to the above-named account;
   c. Obtaining (and providing to the Custodian) accurate and timely loan valuations;
   d. Recording and perfecting any security interests associated with the loan; and
   e. Making reasonable attempts to enforce repayment of the loan.

2) I am aware of the IRS's prohibited transaction (PT) rules that apply to this account. These PT rules prohibit both transactions between disqualified persons and using the account's assets in ways that are considered "self dealing." Such PTs may result in the complete distribution and taxation of my account assets. I agree that I am responsible for ensuring that my account does not engage in any PT and that the Custodian has no duty to monitor or enforce the PT rules.

3) Prohibited transactions can more easily arise without an unrelated third-party loan servicer, especially if the account owner permits the account to hold unsecured notes. I understand that the following partial list of transactions may constitute PTs, and I will not engage in them.
   a. Lending account assets with no expectation of repayment.
   b. Using the lending relationship for my own benefit (e.g., lending assets with the expectation of some benefit accruing outside the account).
   c. Lending account assets to any disqualified persons (e.g., certain relatives), even if otherwise reasonable loan provisions apply.

## Section 4 — Account Owner Agreement and Authorization

As the account owner named above, I agree to release, hold harmless, indemnify, and defend the Custodian of my above-named account from any and all liabilities, claims, and demands that arise out of the servicing of secured or unsecured loans made by this account.

X _[signature]_         Hanschristopher Struzyna                3/18/22
Account Owner Signature    Account Owner Name (Please type or print)    Date



**Congratulations! You are now able to submit your completed request.**

Before you submit this form please review all completed information prior to signing. When ready, mail, email, or fax this completed form to:

**Mail to:** Provident Trust Group
8880 W. Sunset Rd., Suite 250
Las Vegas, NV 89148

**Email to:** investments@trustprovident.com

**Fax to:** (702) 253-7565

## Section 4 — Account Owner Agreement and Authorization

As the account owner named above, I agree to release, hold harmless, indemnify, and defend the Custodian of my above-named account from any and all liabilities, claims, and demands that arise out of the servicing of secured or unsecured loans made by this account.

X _[signature]_

Account Owner Signature

Hanschristopher Struzyna
Account Owner Name *(Please type or print)*

3/18/22
Date



**Congratulations! You are now able to submit your completed request.**

Before you submit this form please review all completed information prior to signing. When ready, mail, email, or fax this completed form to:

**Mail to:** Provident Trust Group
8880 W. Sunset Rd., Suite 250
Las Vegas, NV 89148

**Email to:** investments@trustprovident.com

**Fax to:** (702) 253-7565

Loan Servicing Waiver (6/2019)

Page 2 of 2
©2019 Ascensus, LLC

1. Subordination. The indebtedness evidenced by the Note shall be postponed and subordinated and is subject in right of payment to the prior payment in full of all Senior Debt (defined below) of the Company. "Senior Debt" means any indebtedness (whether outstanding on the date of issuance of this Note or thereafter created) incurred by the Company in connection with borrowings by the Company (including its subsidiaries) whether such indebtedness is or is not specifically designated by the Company as being Senior Debt in its defining instruments.

2. Subrogation. Subject to the payment in full of all Senior Debt of the Company, Holder shall be subrogated to the rights of the holders of Senior Debt of the Company to receive payments or distributions of assets of the Company made on the Senior Debt of the Company until the principal of and interest on this Note shall be paid in full, and for purposes of such subrogation, no such payment or distributions to the holders of Senior Debt of the Company of cash, property or securities, which otherwise would be payable or distributable to Holder, shall be between the Company, its creditors other than the holders of Senior Debt of the Company, and Holder, be deemed to be a payment by the Company to or on account of this Note, it being understood that the provisions of this paragraph are intended solely for the purpose of defining the relative rights of Holder, on the one hand, and the holders of Senior Debt of the Company, on the other hand.

3. Non-impairment. Nothing contained in this Note is intended to or shall impair, as between the Company, the Company's creditors other than the holders of Senior Debt of the Company, and Holder, the obligation of the Company, which is absolute and unconditional, to pay to Holder the principal of and interest on this Note, as and when the same shall become due and payable in accordance with its terms, and which is intended to rank equally with all other general obligations of the Company. In addition, nothing contained in this Note is intended to or shall affect the relative rights of Holder and creditors of the Company other than the holders of Senior Debt of the Company, nor shall anything herein or therein prevent the Holder of this Note from exercising all remedies otherwise permitted by applicable law upon the occurrence of an Event of Default.

4. Events of Default. An Event of Default is a default in the payment of principal and interest upon this Note when it becomes due and payable and continuance of such default for a period of thirty (30) days. If an Event of Default occurs and is continuing, the holders of at least a majority in principal amount of the then outstanding Notes may declare all the Notes to be due and payable immediately.

5. Transfer and Exchange. This Note may not be assigned, transferred or otherwise alienated without the prior written consent of the Company (which consent shall not be unreasonably withheld) and shall be subject to the Company's right to demand and receive an opinion of Holder's legal counsel (which counsel shall be reasonably acceptable to the Company) that the transfer does not violate any applicable securities laws including all laws with respect to Rule 147 and Rule 501 of Regulation D of the Securities Act of 1933. The Company may also require a signature guarantee.

6. Conversion and Company Redemption. This Note is not convertible to equity in the Company. The Company may, in its sole discretion, elect to redeem some or all of the Notes at any time prior to the Maturity Date by providing ten (10) days notice to Holder. Interest to the redemption date will be paid, but there is no pre-payment penalty or any other fee payable upon early redemption of the Note.

7. Amendments and Waivers. Subject to certain exceptions, the Notes may be amended or supplemented and any existing Default under, or compliance with any provision may be waived with the written consent of the Holders of at least a majority in principal amount of the Notes then outstanding. Without the consent of any Holder, the Company may amend or supplement the Notes to cure any ambiguity, defect or inconsistency; to provide for assumption of the Company's obligations to holders of the debt securities in the case of a merger or consolidation; to provide for additional uncertificated Notes or certificated Notes (if applicable); to make any change that would provide any additional rights or benefits to the holders of the Notes or that does not adversely affect the legal rights of any such holder, including an increase in the aggregate dollar amount of debt securities which may be outstanding, to modify the Company's policy to permit redemptions of the Notes upon the death or total permanent disability of any holder of the Notes (but such modification shall not adversely affect any then outstanding security); or to make any other change that may be required, provided that such change does not have a material adverse effect on the Noteholders.

8. No Recourse Against Others. A director, officer, employee, incorporator or stockholder, of the Company, as such, shall not have any liability for any obligations of the Company under the Notes or for any claim based on, in respect of, or by reason of, such obligations or their creation. Each Holder by accepting a Note waives and releases all such liability. The waiver and release are part of the consideration for the issuance of the Notes.

9. Governing Law. This Note shall be construed and enforced in accordance with the laws of the State of Nevada, except as may be pre-empted by federal law. The Company and Holder consent to the personal jurisdiction of the appropriate state or federal court located in Clark County, Nevada.

10. Waiver of Jury Trial. In any controversy or claim adjudicated before a court of law, the parties mutually agree to waive the right of trial by jury as to such controversy or claim.

11. Headings. The headings, captions and arrangements used in this document are for convenience only and shall not affect the interpretation of this Note.

| Subordinate Note Signature Page ||
|---|---|
| Holder's Information ||
| Holder Title: | Provident Trust Group LLC FBO Hanschristopher Struzyna Solo k |
| Holders Signature *[signature]* | 3/18/22   Date |
| (Holder's Signature is not required to be notarized) ||

| Borrower's Information | |
|---|---|
| MJF Holdings, LLC | 864-918-0001 |
| Michael J. French | french@mjfcapital.com |
| | Principal Manager |
| | Borrower's Title |
| *[signature]* | 3/3/2022 |
| Borrower's Signature | Date |
| (Borrower's Signature is required to be notarized) | |
| Notary's Information | |

State Of _South Carolina_
County Of _Greenville_
This document was signed or acknowledged before me on

_March_ , _2022_ ,          3rd Day of

Month        Year         By:

_Kevin Charles Easterday_       *[signature]*
Notary Name                  Notary Signature

Kevin Charles Easterday
Notary Public, State of South Carolina
My Commission Expires January 28, 2030

Notary Stamp

## EXHIBIT B

### SUBORDINATED NOTE

THIS NOTE AND THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "*ACT*"). THEY MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT AS TO THE SECURITIES UNDER THE ACT OR AN OPINION OF COUNSEL SATISFACTORY TO THE CORPORATION THAT SUCH REGISTRATION IS NOT REQUIRED.

NUMBER  2022 - 121                    DATE ISSUED _____

PRINCIPAL AMOUNT  $ 60,500.00

INTEREST RATE: 12% per annum          MATURITY DATE _____

MJF Holdings, LLC, a Nevada limited-liability company (herein, the "*Company*"), for value received, hereby promises to pay to: (the "*Holder*" or "*Noteholder*") the principal amount plus accrued interest as follows:

Principal and Interest payments shall be made by check delivered by mail to the address of the Holder appearing on the Note register maintained by the Registrar (which address may be changed from time to time by notice given by Holder in writing to the Registrar) or in person to Holder at the offices or agency of the Paying Agent, in exchange for this Note at the Maturity Date. Holder shall be notified prior to such payment of the address at which such payment shall occur. All payments hereunder shall be made in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts. All interest on the Notes will be paid quarterly commencing on the ninety-fifth (95th) day after the Note is issued, and on each three (3) month anniversary thereafter, with all accrued interest and principal due and payable on the Maturity Date. The Notes are recorded as a book entry. Interest shall be computed on the basis of a 365-day calendar year. The Company is currently acting as Paying Agent and Registrar. The Company may change the Registrar or Paying Agent without notice to the Noteholder.

Reference is hereby made to the further provisions of this Note set forth on the reverse hereof, including rights of conversion, which further provisions shall for all purposes have the same effect as if set forth at this place.

IN WITNESS WHEREOF, MJF Holdings, LLC has caused this Note to be signed on the date first above written.

ISSUER: MJF Holdings, LLC

BY: _____

**From:** clientsupport@mjfcapital.com
**Subject:** Let's chat about your investment - MJF Holdings
**Date:** August 31, 2022 at 5:53 AM
**To:** ██████@gmail.com



Hello Hans,

You are already an investor with MJF Holdings and we want to thank you for trusting us with your investment.

Now that you've gotten a taste of how easy investing with MJF can really be, we would like to introduce some amazing new opportunities to you.

We have identified the recent concerns in the economy with inflation and uncertainty in markets.

So, at MJF we have decided to take action to not only protect our clients from the current state of the economy but, to plan out how to capitalize for you on your investment. We understand economic downturns are where true wealth is created. That's what we are going to do for you.

We'd like to schedule a quick call this month to to talk about our new opportunities. Click the link below to schedule your 15 minute call.

https://go.oncehub.com/MJFHoldingsJennifer

Thanks!



**Client Support**
MJF Capital, LLC

t. 864.202.6514  |  e. clientsupport@mjfcapital.com
w. mjfcapital.com  |  s. P.O. Box 840 | Pendleton, SC 29670

**EXHIBIT B**