# EXHIBIT 6

# DECLARATION AND EXHIBITS OF

# MICHAEL J. FRENCH

## DECLARATION OF MICHAEL J. FRENCH

I, Michael J. French, being legally fit and qualified to testify in a court of law, and having personal knowledge of the facts contained herein, do hereby declare under the penalty of perjury (28 U.S.C. § 1746) as follows:

**1.** I am over the age of 18 and a resident of Pendleton, South Carolina.

**2.** On December 15, 2022, I received a subpoena from the United States Securities and Exchange Commission (the "Commission") captioned in the matter of MJF Holdings, LLC (A-04041), dated December 14, 2022, requiring my sworn testimony on January 18, 2023, a copy of which is attached as Exhibit A.

**3.** In lieu of appearing for testimony as called for by Exhibit A, I assert the Fifth Amendment privilege against self-incrimination as to each of the following areas:

    a.    Whether I currently own or control or previously have owned or controlled any of the following entities:

        i.    MJF Capital, LLC ("MJF Capital");
        ii.    MJF Holdings, LLC ("MJF Holdings");
        iii.    MJF Marketing, LLC;
        iv.    MJF Insurance & Finance, LLC;
        v.    Money Just Flows, LLC;
        vi.    Future Funders, LLC;
        vii.    Allys Farm LLC;
        viii.    Bandbox Capital, LLC;
        ix.    Bandbox Homes, LLC;
        x.    Dugout Enterprises, LLC;
        xi.    Dugout Capital LLC;
        xii.    Dugout Cashflow LLC;
        xiii.    Dugout Solutions LLC;
        xiv.    FISBIS LLC;
        xv.    Gradesky Ecom LLC;
        xvi.    Hoventa Products LLC;
        xvii.    Kashic Products LLC;
        xviii.    Lets Go Waffles LLC;
        xix.    MWL Capital LLC;
        xx.    MWL Cashflow LLC;
        xxi.    MWL Enterprises LLC;
        xxii.    MWL Solutions LLC;
        xxiii.    Papi Chino LLC;
        xxiv.    Quantum Capital LLC;
        xxv.    Quantum CashFlow LLC;
        xxvi.    Quantum Enterprises LLC;
        xxvii.    Sonetim Online LLC;
        xxviii.    Wind It Up LLC;
        xxix.    101 Cumberland LLC;

xxx.   28 Cumberland LLC;
xxxi.   351 Welborn Drive LLC;
xxxii.   211 Crooked Cedar Way LLC;
xxxiii.   313 Sliding Rock Drive LLC;
xxxiv.   52 Rivermont Road LLC;
xxxv.   302 Keithwood Drive LLC;
xxxvi.   112 Bayview Way LLC; and
xxxvii.   208 Sears Street LLC

b.    Whether I, through MJF Capital or MJF Holdings, solicited investments, through the sale of unsecured promissory notes issued by MJF Capital or MJF Holdings, from any individual.

c.    Whether MJF Capital, MJF Holdings, or I, sold or offered to sell any unsecured promissory note issued by MJF Capital or MJF Holdings with a maturity of approximately 12 months and a return of 12 percent interest.

d.    Whether Quest Education L.L.C. or its principal, Daniel Blue (collectively "Quest"), provided me, MJF Capital, or MJF Holdings, the identities and contact information of potential investors.

e.    Whether MJF Capital, MJF Holdings, or I, entered into any agreement with Quest.

f.    Whether MJF Capital, MJF Holdings, or I, paid Quest a fee for referring, presenting, and/or recommending investments in MJF Capital or MJF Holdings to Quest clients.

g.    The information I communicated to, or directed any MJF Capital or MJF Holdings employees to communicate to, Quest or its principal, Daniel Blue, concerning the operations of or potential investment in MJF Capital or MJF Holdings.

h.    The information I communicated to, or directed any MJF Capital or MJF Holdings employees to communicate to, Quest or its principal, Daniel Blue, concerning the use of investor funds.

i.    The information I communicated to any individual affiliated with MJF Capital or MJF Holdings concerning the operations of or potential investment in MJF Capital or MJF Holdings.

j.    The information I communicated to any individual affiliated with MJF Capital or MJF Holdings concerning the use of investor funds.

k.    The accuracy of and basis for any representations made by me, or others at my direction, to potential investors in MJF Capital or MJF Holdings.

l.    Whether I communicated with, or directed any MJF Capital or MJF Holdings employees to communicate with, any individual, including, but not limited to,

any potential investor, concerning the operations of or potential investment in MJF Capital or MJF Holdings.

m. The truth of and basis for any information I communicated to, or directed any MJF Capital or MJF Holdings employees to communicate to, any individual, including, but not limited to, any potential investor, concerning the operations of or potential investment in MJF Capital or MJF Holdings.

n. The truth of and basis for any information I communicated to, or directed any MJF Capital or MJF Holdings employees to communicate to, any individual, including, but not limited to, any potential investor, concerning the use of funds invested in MJF Capital or MJF Holdings.

o. Whether MJF Capital, MJF Holdings, or I, knew or took any steps to determine whether any potential investor contacted concerning the operations of or potential investment in MJF Capital or MJF Holdings qualified as an accredited investor.

p. Whether I provided, drafted, or approved the content of any marketing or reference materials concerning the operations of or potential investment in MJF Capital or MJF Holdings, including the documents attached as Exhibits B through I.

q. Whether I had a good-faith basis for the statements made in any marketing or reference materials concerning the operations of or potential investment in MJF Capital or MJF Holdings, including whether I had a good-faith basis for the statements made in Exhibits B through I.

r. Whether I provided, drafted, or approved the content of any videos concerning the operations of or potential investment in MJF Capital or MJF Holdings.

s. Whether the document attached as Exhibit J is an accurate transcript of a video that I approved and sent, or directed others to send, to potential investors in MJF Capital or MJF Holdings.

t. Whether I had a good-faith basis for any of the statements made in any videos concerning the operations of or potential investment in MJF Capital or MJF Holdings.

u. Whether I, or any MJF Capital or MJF Holdings employee at my direction, provided any document or media listed in paragraphs (p), (r), and (s) above to any potential or actual investor in MJF Capital or MJF Holdings.

v. Whether I provided any document or media listed in paragraph (p), (r) or (s) to any MJF Capital or MJF Holdings employee to use as a reference when communicating with any individual concerning the operations of or potential investment in MJF Capital or MJF Holdings.

w. Whether I had ultimate authority over the content and dissemination of any of the documents and media listed in paragraphs (p), (r), and (s) above, or any other representations made to potential investors in MJF Capital or MJF Holdings.

x. Whether any of the following statements are true:

    i. MJF Holdings was a "division" of MJF Capital.

    ii. MJF Capital or MJF Holdings were in the business of underwriting commercial loans on a fractional basis.

    iii. MJF Capital or MJF Holdings underwrote for 70 different lenders, reviewed over 1,000 loans per week, and invested in the loans that met their criteria.

    iv. MJF Holdings ensured that it did not comingle company funds with investor funds.

    v. The only way that MJF Holdings and MJF Capital obtained any money related to investments in MJF Holdings or MJF Capital promissory notes was if those investments were put to use by MJF Holdings or MJF Capital that yielded returns in excess of 12%.

    vi. MJF Capital or MJF Holdings were professional underwriting companies.

    vii. MJF Capital or MJF Holdings had strict underwriting criteria and used algorithms  to tell them what particular businesses were likely to succeed or fail.

    viii. MJF Capital or MJF Holdings deployed small amounts of money into a lot of loans rather than large amounts of money into a single loan.

    ix. MJF Holdings guaranteed its investors a fixed rate of return.

    x. MJF Holdings told investors that "the only way we make our money is if we earn on top of that fixed rate, which gives us an extra layer of responsibility to your funds."

y. Whether I disclosed to potential investors in MJF Capital or MJF Holdings any referral fees, commissions, or other incentive payments, regardless of how described, that were made to Quest or others.

z. Whether any funds received as a result of the sale of promissory notes issued by MJF Capital or MJF Holdings were used to lend money to any non-MJF-related entity pursuant to an investment in the "commercial lending space."

aa. Whether any funds received as a result of the sale of promissory notes issued by MJF Capital or MJF Holdings were used for any purposes other than the purposes disclosed to investors in connection with the offer and sale of the promissory notes.

bb.   Whether any funds received as a result of the sale of promissory notes issued by MJF Capital or MJF Holdings were used to purchase any assets, including, but not limited to, real estate in the name of  MJF Capital or MJF Holdings.

cc.   Whether any funds received as a result of the sale of promissory notes issued by MJF Capital or MJF Holdings were used to purchase any assets, including, but not limited to, real estate in the name of any individual or entity other than MJF Capital or MJF Holdings.

dd.   Whether any funds received as a result of the sale of promissory notes issued by MJF Capital or MJF Holdings were used to conduct trading in any securities, commodities, digital assets, or other investment vehicle on any online brokerage or trading platform.

ee.   Whether any funds received as a result of the sale of promissory notes issued by MJF Capital or MJF Holdings were used to found, fund, purchase, or operate any company operating in the e-commerce space.

ff.   Whether any funds received as a result of the sale of promissory notes issued by MJF Capital or MJF Holdings were used to create and maintain social media accounts (e.g., TikTok, Facebook, Instagram, YouTube, etc.) under my name or the name of MJF Capital, MJF Holdings, or any entity listed in paragraph (a).

gg.   Whether I, or any MJF Capital or MJF Holdings employee at my direction, created or maintained any social media accounts (e.g., TikTok, Facebook, Instagram, YouTube, etc.) used to promote investments in MJF Capital or MJF Holdings.

hh.   Whether any funds received as a result of the sale of promissory notes issued by MJF Capital or MJF Holdings were used for any personal expenses incurred by me or any member of my family, including the purchase of professional services, home construction or renovation, motor vehicles, motor vehicle customization, boats, child support, online currency or any currency substitute, including TikTok coins, or any other expense not for the sole benefit of individuals who invested in MJF Capital or MJF Holdings.

ii.   Whether any funds received as a result of the sale of promissory notes issued by MJF Capital or MJF Holdings were transferred to any bank account, brokerage account, retirement account, or any other account with any financial institution, in my name or the name of any individual or entity other than MJF Capital or MJF Holdings.

jj.   Whether any funds received as a result of the sale of promissory notes issued by MJF Capital or MJF Holdings were used to make interest or principal payments to investors who had previously purchased promissory notes issued by MJF Capital or MJF Holdings.

kk.   The location of investor funds or any assets purchased using investor funds.

ll.   Whether I, or anyone else at my direction, destroyed, erased, or concealed any document or other information that was the subject matter of the letter attached as Exhibit K and/or requested by the Commission in the subpoenas attached as Exhibits L through N.

mm.  Whether I used any credit card issued in the name of any other individual in order to make purchases or payments on behalf of any entity listed in paragraph (a).

nn.   Whether I, or anyone else at my direction, sold or transferred assets purchased using investor funds after I learned of the Commission's investigation in this matter, including, but not limited to:

   i.   2023 Toyota 4-Runner
   ii.   2022 Toyota Camry
   iii.   2021 Mercedes AMG GLE
   iv.   2021 GMC Sierra
   v.   2021 Ford F-450
   vi.   2018 Toyota 4-Runner
   vii.   2015 Lamborghini Huracan
   viii.   1969 Chevelle
   ix.   1967 Chevelle
   x.   1965 Lincoln Continental

oo.   Whether, after learning of the Commission's investigation in this matter, I retained the services of law firm specializing in asset protection.

pp.   Whether, after learning of the Commission's investigation in this matter, I directed others to prepare certain real properties for sale.

qq.   My conduct related to and the circumstances surrounding the following criminal charges asserted against me on March 2, 2023, in Lee County, Florida:

   i.   Intimidation – Written or Electronic Threats to Kill or Do Bodily Harm to Another Person (F-836.10.2a);

   ii.   Aggravated Stalking – Following, Harassing, or Cyberstalking Another Person and Making a Credible Threat to That Person (F-784.048.3);

   iii.   Obstruction of Justice – Tampering with a Witness with Intent to Cause or Induce the Witness to Withhold Testimony or Other Information (F-914.22.1a);

   iv.   Fraud – Uttering Forged Instruments (F-831.02).

rr.   The accuracy of the information provided by me in Application for Criminal Indigent Status, dated March 2, 2023, a copy of which is attached as Exhibit O.

**4.** I have read the formal order directing private investigation in the matter of MJF Holdings, LLC (A-04041) and the Supplemental Order Designating an Additional Officer, copies of which are attached as Exhibits P and Q, respectively.

5.  I assert the Fifth Amendment privilege against self-incrimination as to the truth of each of the statements contained in the formal order.

6.  If called as a witness to testify, I would continue to assert the Fifth Amendment privilege against self-incrimination as to each of the matters referred to in the preceding paragraphs in the Declaration.

I, Michael J. French, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on [date]

*March 23, 2023*

_____

Michael J. French



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA 30326-1382

**ATLANTA**
**REGIONAL OFFICE**

December 14, 2022

**Via UPS**

Mr. Michael J. French
████████████████████
Pendleton, SC ████

 Re:  **In the Matter of MJF Holdings, LLC  (A-04041)**

Dear Mr. French:

 The staff of the Atlanta Regional Office of the United States Securities and Exchange Commission is conducting an investigation in the matter identified above.  The enclosed subpoena has been issued to you as part of this investigation.  The subpoena requires you to give sworn testimony.

 Please read the subpoena and this letter carefully.  This letter answers some questions you may have about the subpoena.  You should also read the enclosed SEC Form 1662.  If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.  Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

*Where and when do I testify?*

 The subpoena requires you to testify under oath in the matter identified on the subpoena.  Your testimony will be taken by audio-visual teleconference means, using the Webex internet platform.  You will be given access to the testimony session through a Webex invite which will be sent from SEC counsel, Grant Mogan, to you.

 A background questionnaire is also enclosed.  During your testimony, the staff intends to ask background questions concerning, among other things, your residences, telephone numbers, education and employment.  To expedite that part of the testimony, we request that you complete the enclosed questionnaire on a voluntary basis and provide it to the staff prior to your testimony.

**Other Important Information**

*May I have a lawyer help me respond to the subpoena?*

**EXHIBIT**
**A**

Yes.  You have the right to consult with and be represented by your own lawyer in this matter. Your lawyer may also advise and accompany you when you testify. We cannot give you legal advice.

*What will the Commission do with the testimony I provide?*

The enclosed SEC Form 1662 explains how we may use the information you provide to the Commission.  This form also has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry.  We are trying to determine whether there have been any violations of the federal securities laws.  The investigation and the subpoena do not mean that we have concluded that you or anyone else has violated the law.  Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If you have any other questions, you may call me at 404-539-8812 or email me at MoganG@sec.gov.  If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

*Grant Mogan*

Grant Mogan
Senior Counsel
Division of Enforcement

Enclosures:   Subpoena
              Background Questionnaire
              SEC Form 1662



## SUBPOENA
# UNITED STATES OF AMERICA
### SECURITIES AND EXCHANGE COMMISSION

Re:   In the Matter of MJF Holdings, LLC (A-04041)

To:   Mr. Michael J. French

█████████████████

Pendleton, SC ██████

**YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

Testimony on January 18, 2023 at 10:00 a.m. EST, by audio-visual teleconference means, using the Webex internet platform.  You will be given access to the testimony session through a Webex invite which will be sent from SEC counsel, Grant Mogan, to you.

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By:   *Grant Mogan*                           Date:   December 14, 2022
——————————————————
Grant Mogan
Senior Counsel
Division of Enforcement

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter.  The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:        If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## BACKGROUND QUESTIONNAIRE

**Please respond to the following questions in the space provided.  If you need additional space for any response, you may attach additional pieces of paper.**

Today's date:  _____

1.  What is your full name?
    _____

2.  Have you ever been known by any other name?  Yes __ No __

    If yes, list each such name and the period(s) in which you were known by that name.
    _____
    _____
    _____

3.  Date and Place of Birth?
    _____

4.  Country of Citizenship?
    _____

5.  Marital Status?  Married __ Divorced __ Single __

    If you have ever been married, state for each marriage: (i) the date(s) of the marriage; (ii) the name of your spouse; (iii) your spouse's birth name, if different; (iv) your spouse's age; and (v) your spouse's occupation.
    _____
    _____
    _____

6.  List the names, ages and occupations of your children, if any.
    _____
    _____
    _____

7.  List all residences you occupied at any time during the last [three] years, including vacation homes, beginning with your current residence.  For each residence, state the address, dates of residence, and all telephone numbers (including facsimile numbers) listed at that address.
    _____
    _____
    _____
    _____

Background Questionnaire
Page 2

8.  List all telephone numbers and telecommunication services that were in your name or
    that you regularly used at any time during the last [three] years.  Include all residential,
    business, cellular, credit card, and VOIP telephone numbers, including those listed in
    your response to question 7, and services such as GoogleVoice, Skype, video conference
    services.  For each telephone number, state the name(s) of the corresponding carrier(s)
    (*e.g.*, AT&T, Verizon, Vonage, Skype, etc.).

    _____
    _____
    _____

9.  List the universal resource locator (URL) for all websites or blogs that you established or
    for which you had the authority to control content, at any time during the last [three]
    years.  For each website, state the name(s) of the domain name registrar (*e.g.* GoDaddy)
    through which the URL was obtained, the name(s) of all individuals or entities who
    provided web site hosting or design services, whether the website contained primarily
    business or personal information, and the time period in which it was active.

    _____
    _____
    _____

10. List all electronic mail addresses and social networking accounts (*e.g.* Facebook,
    LinkedIn, Twitter, Instagram, Flickr, and Google+) that were in your name or that you
    regularly used at any time during the last [three] years.  Include all personal, business and
    shared electronic mail addresses and social networking accounts.  For each electronic
    mail address and social networking account, state the name(s) of the corresponding
    internet service provider(s) (*e.g.*, Google, Yahoo, AOL, or your employer), whether the
    address was used primarily for business or personal correspondence, and the time period
    in which it was active.

    _____
    _____
    _____
    _____
    _____

11. List all usernames for instant messaging and similar electronic communication services
    (including, but not limited to, Bloomberg, Skype, whatsapp), other than those listed in
    your response to questions 8 through 10, that were in your name or that you regularly
    used at any time during the last [three] years.  Include all personal, business and shared
    addresses.  For each username, state the name(s) of the communication service provider
    (*e.g.*, Google, AOL, etc.), whether the address was used primarily for business or

Background Questionnaire
Page 3

personal correspondence, the time period in which it was active, and the name of the software application(s) (*e.g.*, GTalk, ICQ, MSN Messenger) you used to access it.

_____

_____

_____

12. List all internet message boards or discussion forums (including, but not limited to, Money Maker Group, PNQI Message Board, Investors Hub Daily) of which you were a member or on which you posted any messages at any time during the last [three] years. For each message board or discussion forum, state the service provider and your member name or identification information.

_____

_____

_____

PUBLICLY-HELD COMPANIES

13. Are you now, or have you ever been, an officer or director of any publicly-held company?  Yes __  No __

If yes, identify each such company, its CUSIP, and any exchange on which it is or was listed, and state your positions (including membership on any Board or management committees) and the dates you held each position.

_____

_____

_____

14. Are you now, or have you ever been, a beneficial owner, directly or indirectly, of five per cent or more of any class of equity securities of any publicly held company?  Yes __ No __

If yes, identify each such company, its CUSIP, and any exchange on which it is or was listed, and state the amount, percentage, and dates of your ownership.

_____

_____

_____

Background Questionnaire
Page 4

<u>PRIVATELY-HELD COMPANIES</u>

15.     Are you now, or have you ever been, a beneficial owner, directly or indirectly, of any privately-held company (*i.e.*, corporation, partnership, limited liability company or other corporate form)?   Yes__  No__

        If yes, identify each such company, including address and other contact information, and state your positions and the dates you held each position.

        _____
        _____
        _____

16.     Are you now, or have you ever been, a manager or a member of any privately-held company (*i.e.*, corporation, partnership, limited liability company or other corporate form)?  Yes__  No__

        If yes, identify each such company, including address and other contact information, and state your positions and the dates you held each position.

        _____
        _____
        _____

<u>SECURITIES ACCOUNTS</u>

17.     List all securities or brokerage accounts that you have held in your name, individually or jointly, at any time during the last [three] years.  Include all foreign accounts.  For each such account, identify: (i) the brokerage firm; (ii) the location of the branch where your account is or was held; (iii) your broker; (iv) the type of account (*i.e.*, cash, margin or IRA); (v) the account number; and (vi) whether any person has ever held discretionary authority or power of attorney over the account; if so, name such person(s).

        _____
        _____
        _____
        _____
        _____

18.     List all securities or brokerage accounts (including foreign accounts), other than those listed in your answer to question 17, in which you had any direct or indirect beneficial

Background Questionnaire
Page 5

interest at any time during the last [three] years.  For each such account, provide the information requested by question 17.

_____
_____
_____
_____
_____

19. List all securities or brokerage accounts (including foreign accounts), other than those listed in your answer to question 17 or 18, over which you had any control at any time during the last [three] years.  For each such account, provide the information requested by question 17.

_____
_____
_____
_____
_____

BANK ACCOUNTS

20. List all accounts you have held in your name at any financial institution (*i.e.*, bank, thrift, or credit union) at any time during the last [three] years.  Include all foreign accounts. For each such account, identify: (i) the financial institution; (ii) the address of the branch at which your account is or was held; (iii) the type of account (*i.e.*, checking, savings, money market or IRA); (iv) the account number; and (v) whether any person has ever had discretionary authority or power of attorney over the account; if so, name such person(s).

_____
_____
_____
_____
_____

21. List all accounts at financial institutions (including foreign accounts), other than those listed in your answer to question 20, in which you had any direct or indirect beneficial interest at any time during the last [three] years.  For each such account, provide the information requested by question 20.

_____
_____
_____
_____
_____

Background Questionnaire
Page 6

22. List all accounts at financial institutions (including foreign accounts), other than those listed in your answer to question 20 or 21, over which you had any control at any time during the last [three] years.  For each such account, provide the information requested by question 20.

_____
_____
_____
_____
_____
_____

23. List any other accounts (including foreign accounts), other than those listed in your answers to questions 20 through 22, that were held in your name, in which you had any direct or indirect beneficial interest, or over which you had any control, that you have used to transfer funds in the last [three] years, including, but not limited to, PayPal accounts.  For each such account, provide the information requested by question 20.

_____
_____
_____

PRIOR PROCEEDINGS

24. Have you ever testified in any proceeding conducted by the staff of the Securities and Exchange Commission, a U.S. or foreign federal or state agency, a U.S. or foreign federal or state court, a stock exchange, the Financial Industry Regulatory Authority ("FINRA") or any other self-regulatory organization ("SRO"), or in any arbitration proceeding related to securities transactions?  Yes __  No __

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the organization or agency; and (iii) the date(s) on which you testified.

_____
_____
_____
_____

25. Have you ever been deposed in connection with any court proceeding?  Yes __  No __

If yes, for each such proceeding, identify: (i) the title of the proceeding, and (ii) the date(s) on which you were deposed.

_____
_____

Background Questionnaire
Page 7

_____
_____

26. Have you ever been named as a defendant or respondent in any action or proceeding brought by the SEC, any other U.S. or foreign federal agency, a state securities agency, FINRA, an SRO, or any exchange?  Yes __ No __

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the agency or tribunal; (iii) the substance of the allegations; (iv) the outcome of the proceeding; and (v) the date of the outcome.

_____
_____
_____
_____

27. Have you ever been a defendant in any action (other than those listed in response to question 26) alleging violations of the federal securities laws?  Yes __ No __

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the court or tribunal; (iii) the outcome of the proceeding; and (iv) the date of the outcome.

_____
_____
_____
_____

28. Have you ever been a defendant in any criminal proceeding other than one involving a minor traffic offense?  Yes __ No __

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the court or tribunal; (iii) the outcome of the proceeding; and (iv) the date of the outcome.

_____
_____
_____
_____

Background Questionnaire
Page 8

<u>EDUCATIONAL HISTORY</u>

29. Provide the requested information about each educational institution that you have attended, beginning with the most recent and working backward to the date that you completed high school.

| | | | |
|---|---|---|---|
| Name of School | | | |
| City | State | Country | Zip Code |
| Dates of Attendance: Month/Year to Month/Year | | Degree/Major | Month/Year of Degree |

| | | | |
|---|---|---|---|
| Name of School | | | |
| City | State | Country | Zip Code |
| Dates of Attendance: Month/Year to Month/Year | | Degree/Major | Month/Year of Degree |

| | | | |
|---|---|---|---|
| Name of School | | | |
| City | State | Country | Zip Code |
| Dates of Attendance: Month/Year to Month/Year | | Degree/Major | Month/Year of Degree |

| | | | |
|---|---|---|---|
| Name of School | | | |
| City | State | Country | Zip Code |
| Dates of Attendance: Month/Year to Month/Year | | Degree/Major | Month/Year of Degree |

30. Other than courses taken in connection with institutions listed in response to question 29, list any securities, accounting or business related courses taken since high school.  For each such course, identify the date that the course was completed and the name of the institution or organization that offered the course.

Background Questionnaire
Page 9

PROFESSIONAL LICENSES/CLUBS

31. Do you hold, or have you ever held, any professional license?  Yes__  No __

   If yes, for each such license, identify: (i) the license number or attorney bar number;
   (ii) the licensing organization; (iii) the date the license was awarded; (iv) the date such
   license terminated, if applicable; (v) the date(s) of any disciplinary proceeding(s) against
   you: and (vi) the outcome of any such disciplinary proceeding (*e.g.*, reprimand,
   suspension, revocation).

   _____
   _____
   _____
   _____

32. Are you, or have you ever been, a member of any professional or business club or
   organization?   Yes __  No __

   If yes, list for each: (i) the name of the club or organization; (ii) its address; (iii) the
   date(s) of your membership; and (iv) service in any governance roles (*e.g.*, board
   member, committee member, etc.) including title and dates of service.

   _____
   _____
   _____
   _____

33. Are you, or have you been in the last [three] years, a member of any social clubs,
   charities or nonprofit organizations?   Yes ___  No ___

   If yes, list for each: (i) the name of the social club, charity or nonprofit organization;
   (ii) its address; (iii) the date(s) of your membership; and (iv) service in any governance
   roles (*e.g.*, board member, committee member, etc.) including title and dates of service..

   _____
   _____
   _____
   _____

EMPLOYMENT HISTORY

34. Are you, or have you ever been, an employee of a broker, dealer, investment adviser,
   investment company, municipal securities dealer, municipal advisor, transfer agent, or

Background Questionnaire
Page 10

nationally recognized statistical rating organization?   Yes ____   No ____

If yes, list for each: (i) the jurisdiction of the entity; (ii) your CRD number; (iii) the entity's CRD number; (iv) the entity's SEC File number; (v) the entity's CUSIP number; and (vi) any foreign registration information similar to the foregoing.

_____

_____

_____

_____

_____

_____

_____

35. State your employment activities, beginning with the present and working backward to the date that you completed high school and attach a recent copy of your resume or curriculum vitae.

_____
Employer's Name/Self-Employment

_____
Employer's Street Address                                      Telephone Number

_____
City                    State              Country        Zip Code

_____
Title                   Dates of Employment               Supervisor

_____
Title                   Dates of Employment               Supervisor

_____
Title                   Dates of Employment               Supervisor

_____
Title                   Dates of Employment               Supervisor

_____
Employer's Name/Self-Employment

_____
Employer's Street Address                                      Telephone Number

_____
City                    State              Country        Zip Code

_____
Title                   Dates of Employment               Supervisor

_____
Title                   Dates of Employment               Supervisor

_____
Title                   Dates of Employment               Supervisor

_____
Title                   Dates of Employment               Supervisor

Background Questionnaire
Page 11

Employer's Name/Self-Employment

| Employer's Street Address | | | Telephone Number | |
|---|---|---|---|---|
| City | State | Country | Zip Code | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |

Employer's Name/Self-Employment

| Employer's Street Address | | | Telephone Number | |
|---|---|---|---|---|
| City | State | Country | Zip Code | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |

Employer's Name/Self-Employment

| Employer's Street Address | | | Telephone Number | |
|---|---|---|---|---|
| City | State | Country | Zip Code | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |
| Title | Dates of Employment | | Supervisor | |

Background Questionnaire
Page 12

| Employer's Name/Self-Employment | | | |
|---|---|---|---|
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |
| Title | Dates of Employment | | Supervisor |

CONTINUE ON ADDITIONAL SHEETS IF NECESSARY

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--

> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare,

SEC 1662 (09-21)

depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.  *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.  *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

**E.  Authority for Solicitation of Information**

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

**F.  Effect of Not Supplying Information**

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily*. There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

**G.  Principal Uses of Information**

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

**H.  Routine Uses of Information**

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection,

including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



Investment Follow Up:

Just to follow up, the investment that I currently have available for Quest clients is:

A $10,000 minimum investment with $500 increments above that for 12 months at 12% interest.

There is a 90-day extension in the paperwork for Quest clients, and if this investment did push to 15 months total, you would end up receiving an extra interest payment, so your money was still working for you during that grace period.

$500 increments means the investment needs to round off at a 500 or 1000 dollar mark examples: ($10,000, $13,500, $37,500, etc.)

The investment is in the commercial lending space and we are working to protect investor's funds by focusing on the following sectors: medical, long-term elder care, commercial construction, grocery, and trucking.

We are lending in micro amounts through a process called syndication where if the lenders are doing a $10,000 loan, we may place $500 into that loan and earn at the same rate of return as the lender.

This opportunity is available because my primary business is a risk management and underwriting company for business lenders where they hire us to dive deeper into the loans they are considering to determine if their business can support the loan financially.

We look at approximately 800-1000 loans a week and participate in approximately 20-50 of them on the investment side.

We do not assign investor money to specific loans and say "if this loan goes bad, then investor X is out their money." That wouldn't be fair to our investors and to be honest, that would be impossible to track.

We have had this running for 4 years prior to offering it to Quest clients and have a net rate of return, after our default rate, of 24% which is why we are offering 12% to investors and hoping to make 12% ourselves as well.

EXHIBIT
B

In the event of a higher default rate than normal, that would cut into our 12% rate of return prior to impacting investors returns.

This provides a nice layer of protection for investors, because that means I would need to lose 50% of my total revenue before it would impact investors returns.

Example: If we make 20% annualized, instead of 24%, you get 12%, and we make 8%.

Just so you know, the largest decline in revenue we have seen the entire time this fund has been available is 3% and that was during the peak of the COVID shut down, but our returns went right back to normal in 60-90 days when businesses opened back up.

You will receive interest-only payments every 90 days and then your final payment at the end of the 12 months would be the final interest payment and the initial investment amount.

Example: $10,000 pays $1,200 total interest, therefore, payments would be $300, $300, $300, $300 quarterly and then the $10,000 would be returned at the same time of the final interest payment.

If you have any questions please feel free to email me or you can text/call me at 864-918-0001.

Additionally, our website can be found at mjfcapital.com but we are not able to publicly market this investment, so there is limited information on there regarding this investment vehicle.

As a reminder, the business you will be investing with is MJF Holdings which is a Nevada based LLC and my primary company is MJF Capital which is a South Carolina based Corporation.

Thank you!

MJF

# WHO IS MJF CAPITAL?



an independent investment fund



an education resource for your
retirement account

### Custodian

the trust company that maintains your
retirement account

## HOW TO INVEST WITH MJF

- $10,000 minimum investment at a 12% rate of return for a period of 12 months.

- $500 increments above $10,000

- You will receive interest only payments every quarter. Your final payment will come at the end of the 12 months with the initial investment amount.

## FLOW OF MONEY

Client confirms the investment



MJF requests paperwork from Custodian



Paperwork is sent to client

Signed paperwork is returned to MJF



Custodian processes paperwork



MJF pays out interest and principal to Custodian

## HOW WE GROW YOUR INVESTMENT

- Focus on commercial lending space

- We lend in micro amounts through a process called syndication. If the lenders are doing a $10,000 loan, we may place $500 into that loan and earn the same rate of return as the lender

## ABOUT THE FUND & RISKS

- This fund was running for 4 years prior to opening it to clients with a net rate for return, after our default rate of 24%. This allows us to offer a fixed rate of return at 12% to investors. We hope to make 12% ourselves.

- In the event of a higher default rate than normal, that would cut into our 12% return before cutting into yours.

**Contact Us:**
clientsupport@mjfcapital.com
P.O Box 840
Pendleton, SC 29670

**EXHIBIT
C**

As a reminder, the business you will be investing with is MJF Holdings which is a Nevada based LLC and our primary company is MJF Capital which is a Greenville, SC based corporation.

# MJF CAPITAL

## ANNUAL NEWSLETTER

---

DECEMBER 2021 · ISSUE 1 · VOLUME 1

---



# mind over money

## INTRODUCTION

Happy Holidays to our MJF family!

It has been an exciting year for us. We have set records regarding growth and performance this year.

With growth comes change ~~as well~~ so we wanted to take a moment to keep our MJF Holdings family informed.

## BRANDING NEWS

We are excited to announce a new look and feel of MJF and its subsidiaries. As you know, MJF Holdings is a subsidiary of MJF INVESTORS Capital, specifically for ~~Quest Clients~~ to avoid commingling funds with our personal funds.

Moving forward you will see all communication and branding from MJF Capital. This doesn't change anything on your end, its simply part of our growing[TH] process that we are excited to unveil ~~for all business sectors of our company.~~ IN 2022. When you see (MJF Capital) ~~that~~ (is MJF Holdings) + FOR BRANDING,

EXHIBIT D



## CORE VALUES

Our Core Values are why we do what we do and we wanted to share them with you.

- First, We Care About People. [As you know, we ~~believe in fee free~~ ~~investing, and we never~~ ~~plan to change that.~~] We are committed to you and are here to help you through any problems. If you are having any issues or questions whether it be related to your investment or ∧ANY other ~~financial~~ questions, we want you to reach out to us. You are a part of our family and we have trusted resources in all areas of the financial world.

So if we can't help you, we ~~probably~~ MAY know some one who can.

- Second, We Do The Right Thing! ~~As~~ ~~mentioned before. W~~e understand that life happens and we want to know what's going on with you! We empower our team to make the best decisions to support our clients. IF SOMETHING HAS CHANGED IN YOUR LIFE AND WE CAN HELP, PLEASE LET US KNOW.
- Third, We Embrace the Process Of Learning! We are always planning, strategizing, and looking out for POSSIBLE ~~what kinds of~~ obstacles THAT could be coming our way. We believe in being proactive, not reactive. ~~We~~ ~~only make money if we both make~~ ~~money, we don't bring your money~~ ~~in and get paid even if it doesn't~~ ~~perform, so that makes us a family~~ ~~and a team.~~

## PERFORMANCE

Even though it seems crazy out there in the economy, we are business as usual and plan to keep it that way. We continue to maintain our normal rates of return. ~~Or~~ [OUR] team is constantly projecting possible hiccups in the economy and planning ahead. This has become the personal focus of MJF.

We are confident in the continued, AND consistent performance of MJF! We continue to play small ball and not swing for home runs!

# THE MJF TEAM:
## FINANCIAL PLANNING/EDUCATION



**Jennifer**
Financial Anaylyst
Primary point of contact
(864) 756-1561



**Michael**
Fund Manager
Secondary point of contact
(864) 918-0001

## CLIENT SUPPORT



**Connie**
Overall Support
clientsupport@mjfcapital.com
(864) 202-6514

OR



**Jordan**
Paperwork AND
~~Management~~,
Scheduling
Support
~~jordan@mjfcapital.com~~
~~(864) 202-6514~~



**Jess**
Marketing and Paperwork
Management Support
jess@mjfcapital.com



**Laurel**
Bookkeeping,
Account
Support
~~billing@mjfcapital.com~~

**CHANGES TO CONTACT INFORMATION**

NEW Mailing Address:
P.O. Box 840
Pendleton, SC 29670

The OLD P.O. Box will be active until April

Our Primary Office phone number is (864) 918-0001. It is monitored during normal business hours Monday-Friday(EST)

We wanted to take a minute to thank Annie Edwards for everything she has done for MJF Capital and MJF Holdings as a company in addition to all the support she provided you as a client. Annie has gone on to pursue other endeavors and we wish her the best.



# MJF CAPITAL

## ANNUAL NEWSLETTER

DECEMBER 2021 · ISSUE 1 · VOLUME 1



mind
over
money

## INTRODUCTION

Happy Holidays to our MJF family!

It has been an exciting year for us. We have set records regarding growth and performance this year.

With growth comes change so we wanted to take a moment to keep our MJF Holdings family informed.

## BRANDING NEWS

We are excited to announce a new look and feel of MJF and its subsidiaries. As you know, MJF Holdings is a subsidiary of MJF Capital, specifically for investors, to avoid commingling funds with our personal funds.

Moving forward you will see all communication and branding from MJF Capital. This doesn't change anything on your end, its simply part of our growth process that we are excited to unveil in 2022. For branding, MJF Capital is MJF Holdings.

EXHIBIT E



So if we can't help you, we may know some one who can.

- Second, We Do The Right Thing! We understand that life happens and we want to know what's going on with you! We empower our team to make the best decisions to support our clients. If something changes in your life and we can help, please let us know!

- Third, We Embrace the Process Of Learning! We embrace the process of learning and know that we have to be ready to pivot and move as the world and economy moves so we have a dedicated team proactively researching, learning and projecting possible changes.

## CORE VALUES

Our Core Values are why we do what we do and we wanted to share them with you.

- First, We Care About People. We are committed to you and are here to help you through any problems. If you are having any issues or questions whether it be related to your investment or any other financial questions, we want you to reach out to us. You are a part of our family and we have trusted resources in all areas of the financial world.

## PERFORMANCE

Even though it seems crazy out there in the economy, we are business as usual and plan to keep it that way. We continue to maintain our normal rates of return. Our team is constantly projecting possible hiccups in the economy and planning ahead. This has become the personal focus of MJF.

We are confident in the continued and consistent performance of MJF! We continue to play small ball and not swing for home runs!

# THE MJF TEAM:
## FINANCIAL PLANNING/EDUCATION



**Jennifer**
Financial Anaylyst
Primary point of contact
(864) 756-1561



**Michael**
Fund Manager
Secondary point of contact
(864) 918-0001

### CHANGES TO CONTACT INFORMATION

NEW Mailing Address:
P.O. Box 840
Pendleton, SC 29670

The OLD P.O. Box will be active until April

Our Primary Office phone number is (864) 918-0001. It is monitored during normal business hours Monday-Friday(EST)

## CLIENT SUPPORT



**Connie**
Overall Support
clientsupport@mjfcapital.com
(864) 202-6514



**Jordan**
Paperwork and
Scheduling
Support
clientsupport@mjf
capital.com
(864) 202-6514



**Jess**
Marketing and Paperwork
Management Support j



**Laurel**
Bookkeeping,
Account
Support

We wanted to take a minute to thank Annie Edwards for everything she has done for MJF Capital and MJF Holdings as a company in addition to all the support she provided you as a client. Annie has gone on to pursue other endeavors and we wish her the best.

= Recording 3
= Recording 2
= Recording 1
= Pitch Fixes

Speaker 1: Suzie
Speaker 2: Rachel

## MJF Holdings Pitch

### Speaker 1:

So, you're interested in investing with us. Well you may be asking yourself "who is MJF Holdings?"

MJF Holdings is a division of MJF Capital and is a specific entity built to solve a need in the commercial lending space.

### Speaker 2:

MJF *Capital* went from *selling* commercial loans to *underwriting* commercial loans on a fractional basis.

Now, MJF *Capital* underwrites for 70 different lenders and reviews over 1000 loans a week!

As a result of underwriting those loans, we have developed relationships with many of the lenders and they allow us to invest into the loans that match our criteria.

### Speaker 1: interjection

MJF *Holdings* ensures that we aren't co-mingling *company* funds with investor funds.

So, why MJF Holdings?

### Speaker 2:

Well, we are not your typical investment company.

First of all, we do not charge you any fees *whatsoever*.

The only way we get paid is if we perform at a rate higher than what we are paying our investors because we believe in fee free investing.

### Speaker 1:

Additionally, MJF Holdings is a professional underwriting company so we are *deeply* involved in the financial assessment of these loans.

Sometimes lenders follow our guidelines, and sometimes they don't; but, the deals we find that we *REALLY* like, we deploy our own funds into as well as investor funds -if it meets our investment criteria.

We are more strict with investor money vs our own money and we have the following guidelines in place regarding investor money:

### Speaker 2:

**EXHIBIT
F**

Speaker 2:

 We *do not* invest in high risk industries like restaurants, entertainment, travel, or other industries we consider "leisure expenses" by consumers, however, we *do* have enough deal flow to invest into deals under "essential" type business models.

***Speaker 1: interjection***

 What we call "essential" is something that we do not believe would be impacted by another surge of COVID-19 or other catastrophic events.

***Speaker 2: response***

 Exactly. We gauge industries' failure rates by how long they have been in business and what their annual revenue is. We use algorithms per industry to tell us what particular businesses are likely to succeed or fail. Then we only invest in companies that meet our underwriting criteria for investor funds.

 Also from a risk management standpoint, we take a mutual-fund-type approach to our investing, and we deploy *small* amounts into a *lot* of loans rather than *large* amounts into a *single* loan and *hope* it is going to perform over a long period of time.

***Speaker 1:***

 As a result your investment goes into a pooled fund, meaning that we do not assign investors to specific deals.

First of all, it would be very difficult to track who is in what deal just because of the large amount of deals we are in, but also, we don't want to assign people to specific deals. Because if those companies decide not to pay their bills, we don't want to have to notify an individual investor that they lost their money while *other* investors are still making money on *their* investments.

For that reason, we guarantee the investors a *fixed* rate of return and the only way we make our money is if we earn on top of that fixed rate which gives us an *extra* layer of responsibility to *your* funds.

***Speaker 2:***

 The investment is structured like this:

 Investors are issued a promissory note for 12 months with a possible 3 month extension. So the longest it could last would be 15 months.

 The 3 month extension is mostly to time the investment to make sure it lasts *over* a year to assure that our investors will not be impacted by "short term capital gains" taxes.

 While your investment is under management you are locked into a 12% fixed rate of return.

We typically have a $10,000 minimum investment starting point.

**Speaker 1:**

So let's break down the math. A $10,000 investment, at a return of 12%, would earn $1200 over the year.



We pay our investors quarterly interest-only disbursements back into their accounts, so that means a $10,000 investment earning at a 12% fixed interest rate would earn $300 on a quarterly basis for the duration of the investment.

At the end of the investment, the principal will be returned with the final interest payment.



At MJF Capital and Holdings we believe investors should get their principal returned to them approximately every year simply because life can happen and people may need access to those funds.

**Speaker 2:**

Once someone has started their initial investment of a $10,000 minimum, they are allowed to do reinvestments at the minimum amount of $5,000.

Investments are accepted in $500 increments and we do not have a maximum investment amount. We require that investments end with a 500 or a 1,000 - just to keep the math easy, for example, a 10,000 or 10,500 would be acceptable investments.

If you are investing out of a retirement account, all of your interest payments and principal will be distributed in and out of that retirement account, and if you invest with cash, we send the payments directly to you.

**Speaker 1:**

So, to wrap up, we use a mutual fund mentality to diversify our risk within the commercial lending space and pay investors a 12% return over a 12-15 month time period and we *do not* assign investors to specific loans. We simply facilitate the investments on *your* behalf and we do not charge you any kind of fees *at all*. Plus we *only* make money if we earn at a rate above the 12% fixed interest rate.

If you are ready to move forward, the process is simple: you notify MJF Holdings of the amount you would like to start the investment with, we then request paperwork on your behalf from your custodian. The documents will either be emailed or mailed to you and someone in our office will call or text you to let you know documents are on their way. Once we receive the completed documents back from you we will get your investment started!

**Speaker 2: Call to action**



That's pretty easy right? Everyone likes passive income... How much do you want to earn this year?

# Hello and welcome to MJF Holdings! Here's a little info about us and what we do...



The investment that we currently have available for Quest clients is a $10,000 minimum investment at a 12% rate of return for a period of 12 months. There is a possible 90-day extension, but if that were to happen, we would let you know beforehand and your money would keep working for you during that time and earn an additional interest payment.



We accept $500 increments above $10,000, which just means that any number has to round off at either a 500 or 1000 mark just to keep the math simple. For example, $10,000; $10,500; $13,500; $37,000 are all acceptable investment amounts.

The investment is in the commercial lending space and we are working to protect our investor's funds by focusing on the following sectors: medical, long-term elder care, commercial construction, grocery, and trucking/transportation. To keep away from risky situations, we keep our investor's funds in "essential-type" businesses rather than "leisure" businesses. In other words, businesses that would not be impacted by another serge of COVID-19 or other world event.





We lend in micro amounts through a process called syndication where if the lenders are doing a $10,000 loan, we may place $500 into that load to earn the same rate of return as the lender. This opportunity is available because our primary business is a risk management underwriting company for business lenders where they hire us to dive deeper into the loans they are considering to determine if their business can support the loan financially.

**EXHIBIT**
**G**

We look at approximately 800-1000 loans a week and participate in approximately 20-50 of them on the investment side. We do not assign investor money to specific loans and say "if this loan goes bad, then investor X is out their money." That wouldn't be fair to our investors and to be honest, that would be impossible to track.





In the event of a higher default rate than normal, that would cut into our 12% return rather than cutting into yours. This means that we would need to lose 50% of our total revenue before a default would impact our investors' returns. For example, if we make 20% annualized, instead of 24%, you still make 12% and we make 8%. This provides a layer of protection for our investors funds and an added layer of responsibility on us to keep the funds earning.

We have had this running for 4 years prior to offering it to Quest clients and have a net rate of return, after our default rate, of $24% which is why we are offering a fixed rate of return at 12% to investors and hoping to make 12% ourselves.





Just so you know, the largest decline in revenue we have seen the entire time this fund has been available is only 3% and that was during the peak of the COVID-19 lockdown. Our returns went right back to normal within 60-90 days when businesses opened back up!





If you decide to invest, you will receive interest-only payments every 90 days and then your final payment will come at the end of the 12 months along with the initial investment amount. For example, $10,000 pays a total of $1,200 annually, therefore, payments would be $300, $300, and $300, quarterly and then $300+ $10,000 at the last payment date.

As a reminder, the business you will be investing with is MJF Holdings which is a Nevada based LLC and our primary company is MJF Capital which is a Greenville, SC based corporation.



**Now, sit back, relax and enjoy fee-free, passive income...**



Feel free to reach out to our team at french@mjfcapital.com or through Quest Education.

Our website is mjfcapital.com.

If you'd rather get to us through the phone, feel free to call or text 864-202-6514

## **MJF Holdings Pitch**

### **Who is MJF Holdings?**

MJF Holdings is a division of MJF Capital and is a specific entity built exclusively for Quest clients

MJF Holdings was created out of a need in the commercial lending space

MJF is a subsidiary of MJF Capital which used to sell commercial lending products, but due to a high default rate they decided to solve a problem in the space

MJF Capital went from selling commercial loans to underwrite commercial loans on a fractional basis

Now MJF Capital underwrites for 70 different lenders and reviews over 1000 loans a week

As a result of us underwriting those loans we have developed relationships with many of the lenders and they allow us to invest into the loans

So MJF Holdings is exclusive for Quest clients simply so we aren't co-mingling company funds with investor funds

### **Why MJF Holdings**

We are not a typical investment company

First of all, we do not charge you any fees whatsoever

The only way we get paid is if we perform at a rate higher than what we are paying our investors

We believe in fee free investing

Additionally, MJF Holdings is a professional underwriting company so we are deeply involved in the financial assessment of these commercial loans

Sometimes lenders follow our guidelines, sometimes they don't; but the deals we find that we REALLY like, we deploy our own funds into as well as investor funds if it meets our investment criteria

We are more strict with investor money vs our own money and we have the following guidelines in place regarding investor money

EXHIBIT
H

We do not invest in high risk industries like restaurants, entertainment, travel, or other industries we consider "leisure expenses" by consumers

However, we do have enough deal flow to invest into deals under essential type business models

What we call essential is something that we do not personally believe would be impacted by another surge of Corona or other catastrophic events

We gauge industries failure rates and how long and what revenue a business needs to hit to get past its typical failure rate and only invest if companies have surpassed that criteria

Also from a risk management standpoint, we take a mutual fund type approach to our investing and invest very small amounts into a lot of loans rather than large amounts into a single loan or deal and hope it is going to perform over a long period of time

As a result of this, this is a pooled investment and we do not assign investors to specific deals

First of all, it would be very difficult to track who is in what deal just because of the large amount of deals we are in

But also, we don't want to assign people to specific deals and if those companies decide not to pay their bills, we don't want to have to notify an individual investor that they lost their money while other investors are still making money on their investment

So as a result of that, we guarantee the investors a fixed rate of return and the only way we make money is if we earn on top of that return which gives us an extra layer of responsibility to your funds

## How is the investment structured?

Investors are issued a promissory note for 12 months with up to a 3 month extension with the maximum length of the investment lasting 15 months total

The 3 month extension is mostly to time the investment to make sure it lasts over a year to assure investors would not be potentially impacted by short term capital gains taxes

While your investment is under management you are locked into a fixed rate of return of 12%

We typically have a $10,000 minimum investment starting point, so we use that number to breakdown the math

A $10,000 investment at a return of 12% would earn $1200 over the year

We pay our investors quarterly interest only disbursements back into their account so that means a $10,000 investment earning at a 12% fixed interest rate would earn $300 on a quarterly basis for the duration of the investment

At the end of the investment, your principal will be returned with your final interest payment

At MJF Capital and Holdings we believe investors should get their principal returned to them approximately every year simply because life can happen and people may need access to those funds

**Other key points**

Once someone has started their initial investment of a $10,000 minimum, they are allowed to do reinvestments at the minimum amount of $5000

Investments are accepted in $500 increments and we do not have a maximum investment amount.  All investments at all levels are welcome as long as they end with a 500 or a 1000 in the investment amount simply to keep the math easy

If you are investing out of a retirement account, all of your funds will be distributed in and out of that retirement account

**Wrap up**

So to wrap up, we use a mutual fund mentality to diversify our risk within the commercial lending space and pay investors a 12% return over a 12-15 month time period and we do not assign investors to specific loans.  We simply facilitate the investments on your behalf and we do not charge you any kind of fees at all and only make money if we earn at a rate above the 12% fixed rate

If you are ready to move forward, the process is simple.  You notify MJF Holdings of the amount you would like to start the investment with, then we request some paperwork on your behalf from your custodian, we then email or mail the documents out to you, someone in our office will also call or text you to let you know documents were sent out, and once we receive the completed documents back we will get your investment started f

So, you are already an investor with us at MJF Holdings. THANKS

We have identified that there are concerns in the economy with everything that's going on with the government and inflation. There's a lot of uncertainty out there, so, at MJF we have decided to take action on that and put our clients first and try to make our investments with you guys a little bit more protected in the long term.

Here's a quick breakdown of MJF.
MJF Holdings is where you are currently an investor. MJF Capital is the company that managers us. They have a ton of assets under management including 17 e-commerce stores, over eight figures in real estate holdings with no liens, insurance and financial services, education company and we're getting ready to expand into the non-profit as well.

As a whole. MJF Capital is a well-established, well-rounded business with access to multiple assets classes.

HOW

We still do have the one year option, but we really don't like that option because what the owner of our company has done is basically give you as an investor a share of all of MJF Capital rather than just a piece of MJF Holdings. But if you do the one your note, it is going to be *8/10%* and does not include the equity in the other areas of the company.

If you're willing to move to the two-year note at 12% interest, that will include equity of MJF Capital.

We're also going to offer a five-year term. We want to offer people something long-term and substantial, this is going to be at 15% fixed rate of return but the vesting schedule on the equity into MJF Holdings is going to be much more advanced by locking up that longer-term investment for yourself to protect you from what's going on in the economy.

So, MJF Capital is offering MJH Holding investors about $20 million in shares. $15 millions of that is currently being offered to MJF Holding clients, so that includes you. Basically, if you had a $10,000 investment, we give you 10,000 shares within the in, which is been going to hold equity within MJR capital if you do the two or five your investment schedule.

We are not financially incentivized for you to take a look at our new structure and still believe in fee free investing.  (*DOES FRENCH WHAT US TO TALK ABOUT WHY WE ARE MOVING AWAY FROM QUEST – He did touch base on it with his mock call*)

**EXHIBIT**
**I**

This is an extension of your current investment. It's not a new investment. So the beauty of that is you don't have to do new printing and mailing of paperwork. Everything we do can just be electronically signed.

One feature that we really like about this investment schedule is that we are more in control and I haven't get more diversified you may have an opportunity to borrow against your investment if you need capital. We're going to work with you to make sure you have a schedule for your RMDs if you need to.

Basically, we're going to come along with you as a financial coach and a financial partner. You're going to have access to our entire team and all of the services as a client and investor for the long-term growth. We want to help you in any aspect of your financial situation, not just the investment that you have with us.

Conclusion:

Page 1

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

In the Matter of:          )
                           )  File No. A-04041-A
MJF HOLDINGS, LLC          )

SUBJECT:  SEC-A-04041-E-0004265.mp4
PAGES:    1 through 8

AUDIO TRANSCRIPTION

Diversified Reporting Services, Inc.
(202)467-9200

EXHIBIT
J

```
 1              P R O C E E D I N G S
 2            SEC-A-04041-E-0004265.mp4
 3         FEMALE PRESENTER 1:  So, you're interested in
 4    investing with us.  Well, you may be asking yourself,
 5    who is MJF Holdings?  MJF Holdings is a division of MJF
 6    Capital, and is a specific entity built to solve a need
 7    in the commercial lending space.
 8             MJF Capital went from selling commercial loans
 9    to underwriting commercial loans on a fractional basis.
10     Now, MJF Capital underwrites for 70 different lenders,
11    and reviews over 1,000 loans a week.  As a result of
12    underwriting those loans, we have developed
13    relationships with many of the lenders, and they allow
14    us to invest into the loans that match our criteria.
15             FEMALE PRESENTER 2:  MJF Holdings ensures that
16    we aren't commingling company funds with investor funds.
17     So why MJF holdings?
18             FEMALE PRESENTER 1:  Well, we're not your
19    typical investment company.  First of all, we do not
20    charge you any fees whatsoever.  The only way we get
21    paid is if we perform at a rate higher than what we are
22    paying our investors, because we believe in fee-free
23    investing.
24             FEMALE PRESENTER 2:  Additionally, MJF
25    Holdings is a professional underwriting company.  So we
```

```
                                              Page 3
 1   are deeply involved in the financial assessment of these
 2   loans.  Sometimes lenders follow our guidelines, and
 3   sometimes they don't.  But the deals we find that we
 4   really like, we deploy our own funds into, as well as
 5   investor funds, if it meets our investment criteria.
 6           We are more strict with investor money versus
 7   our own money, and we have the following guidelines in
 8   place regarding investor money.
 9           FEMALE PRESENTER 1:  We do not invest in high
10   risk industries like restaurants, entertainment, travel,
11   or other industries we consider leisure expenses by
12   consumers.
13           However, we do have enough deal-flow to invest
14   into deals under essential-type business models.
15           FEMALE PRESENTER 2:  What we call essential is
16   something that we do not believe would be impacted by
17   another surge of, say, COVID-19 or other catastrophic
18   events.
19           FEMALE PRESENTER 1:  Exactly.  We gauge
20   industry's failure rates by how long they have been in
21   business and what their annual revenue is.  We use
22   algorithms per industry to tell us what particular
23   businesses are likely to succeed or fail.  Then we only
24   invest in companies that meet our underwriting criteria
25   for investment funds.
```

```
 1          Also, from a risk management standpoint, we
 2   take a mutual fund type approach to our investing, and
 3   we deploy small amounts into a lot of loans, rather than
 4   large amounts into a single loan, and then hope it is
 5   going to perform over a long period of time.
 6          FEMALE PRESENTER 2:  As a result, your
 7   investment goes into a pooled fund, meaning that we do
 8   not assign investors to specific deals.
 9          First of all, it would be very difficult to
10   track who is in what deal, just because of the large
11   amount of deals we're in.  But also, we don't want to
12   assign people to specific deals, because if those
13   companies decide not to pay their bills, we don't want
14   to have to notify an individual investor that they lost
15   their money, while other investors are still making
16   money on their investments.
17          For that reason, we guarantee the investors a
18   fixed rate of return.  And the only way we make our
19   money is if we earn on top of that fixed rate, which
20   gives us an extra layer of responsibility to your funds.
21          FEMALE PRESENTER 1:  The investment is
22   structured like this.  Investors are issued a promissory
23   note for 12 months with a possible three month
24   extension.  So the longest it could last would be 15
25   months.  The three month extension is mostly to time the
```

Page 5

1    investment to make sure it lasts over a year, to assure
2    that our investors will not be impacted by short-term
3    capital gains taxes.  While your investment is under
4    management, you are locked into a 12 percent fixed rate
5    of return.
6              We typically have a $10,000 minimum investment
7    starting point.
8              FEMALE PRESENTER 2:  So let's break down the
9    math.  A $10,000 investment at a return of 12 percent
10   would earn $1200 over the year.  We pay our investors
11   quarterly interest-only disbursements back into their
12   accounts.  So that means a $10,000 investment earning at
13   a 12 percent fixed interest rate would earn $300 on a
14   quarterly basis for the duration of the investment.
15             At the end of the investment, the principal
16   will be returned with the final interest payment.
17             At MJF Capital and Holdings, we believe
18   investors should get their principal returned to them
19   approximately every year, simply because life can happen
20   and people may need access to those funds.
21             FEMALE PRESENTER 1:  Once someone has started
22   their initial investment of a $10,000 minimum, they are
23   allowed to do reinvestments at the minimum of $5,000.
24   Investments are accepted at $500 increments, and we do
25   not have a maximum investment amount.  We require that

Page 6

1   investments end with a $500 or $1000 just to keep the
2   math easy.
3            For example, a $10,000 or a $10,500 would be
4   acceptable investments.  If you are investing out of
5   retirement account, all of your interest payments and
6   principal will be distributed in and out of that
7   retirement account.  And if you invest with cash, we
8   send the payments directly to you.
9            FEMALE PRESENTER 2:  So to wrap up, we use a
10  mutual fund mentality to diversify our risk within the
11  commercial lending space, and pay investors a 12 percent
12  return over a 12 to 15 month time period.  And we do not
13  assign investors to specific loans.  We simply
14  facilitate the investments on your behalf and we do not
15  charge you any kind of fees at all.  Plus, we only make
16  money if we earn at a rate above the 12 percent fixed
17  interest rate.
18           If you're ready to move forward, the process
19  is simple.  You just notify MJF Holdings of the amount
20  you would like to start the investment with.  We then
21  request paperwork on your behalf from your custodian.
22  The documents will either be emailed or mailed to you,
23  and someone in our office will call or text you to let
24  you know the documents are on their way.
25           Once we receive the completed documents back

1   from you, we will get your investment started.

2             FEMALE PRESENTER 1:  That's pretty easy,

3   right?  Everyone likes passive income.  How much do you

4   want to earn this year?

5             (End of recording.)

6                  * * * * *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              TRANSCRIBER'S CERTIFICATE
 2
 3    I, Christine Boyce, hereby certify that the foregoing
 4    transcript is a complete, true and accurate
 5    transcription of all matters contained on
 6    the recorded proceedings in the Matter of
 7    MJF HOLDINGS, LLC
 8    435221-A
 9
10
11    _____
12    Transcriber  2/16/2023
13
14
15
16
17
18
19
20
21
22
23
24
25
```



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
950 East Paces Ferry Road, N.E., Suite 900
ATLANTA, GA 30326-1382

ATLANTA
REGIONAL OFFICE

December 14, 2022

**VIA UPS**

Mr. Michael J. French
████████████████████
Pendleton, SC ████

    Re:   In the Matter of MJF Holdings, LLC (A-04041)

Dear Mr. French:

We believe you may possess documents and data that are relevant to an ongoing investigation being conducted by the staff of the United States Securities and Exchange Commission. Accordingly, we hereby provide notice that such evidence should be reasonably preserved and retained until further notice. Failure to do so could give rise to civil and criminal liability.

The Commission considers potentially relevant documents to include those created on or after January 1, 2020 that:

    (1)    were created, modified or accessed by the following individuals:

        a.  Michael J. French;

        b.  Jennifer Wakefield; or[1]

        c.  any other current or former employee of any entity created or associated with Michael J. French (the "French Entities").

    (2)    relate or refer to the following transactions/topics:

        a.  The, solicitation, offer, or sale of securities by the French Entities, including but not limited to, equity, notes, or debt;

---

[1] To the extent necessary to bring within the scope of this request any information or documents that might otherwise be construed to be outside its scope, the word "or" means "and/or".

EXHIBIT
K

Mr. Michael J. French
December 14, 2022
Page 2

b.  The French Entities' solicitation, offer, or sale of a third party's securities, including but not limited to, equity, notes, or debt;

c.  The French Entities' solicitation, offer or sale of securities, including but not limited to equity, notes, or debt for a related party;

d.  All communications between French and/or the French Entities and any potential or actual investor in any of the securities identified in subparts (2)a through (2)c;

e.  All communications and/or agreements with or concerning American Estate & Trust, Inc., Provident Trust Group, LLC, or Quest Education LLC; or

f.  The French Entities' sources and uses of all investment money received by it.  This category includes, but is not limited to French's and the French Entities': bank statements; general and auxiliary ledgers; financial statements; and agreements.

Such documents include both "hard copy" versions and electronically-stored information in your possession, custody or control, including text files, data compilations, word processing documents, spreadsheets, e-mail, voicemail, data bases, calendars and scheduling information, logs, file fragments and backup files, letters, instant messages, memoranda, notes, drawings, designs, correspondence, social media posts or communications, or any other communication of any kind. Evidence that is stored electronically may be maintained on shared network files, computer hard drives, servers, DVDs, CD-ROMs, flash drives, thumb drives, laptops, digital recorders, netbooks, PDAs, smartphones, or other handheld devices.

In this letter, I refer to such documents and data as "Evidence."  You have a duty to reasonably preserve and retain such Evidence.

This duty includes an obligation to provide notice to all employees or custodians who may be in possession of Evidence. This duty also extends to the preservation and retention of Evidence in the possession or custody of third-parties, such as an internet service provider or a cloud computing provider, if such Evidence is within your control.

You may need to act affirmatively to prevent the destruction of Evidence. This duty may necessitate quarantining certain Evidence to avoid its destruction or alteration. You should consider whether you need to discontinue the routine destruction of Evidence,

Mr. Michael J. French
December 14, 2022
Page 3

including discontinuing the recycling of backup tapes or other storage media, and the deletion of emails, "trash," "recycling," "drafts," "sent," or "archived" folders. You should avoid running or installing any drive cleaning, wiping, encrypting, or defragmenting software on hard disks of computers that may contain Evidence.

You should consider preserving any forensically recoverable data by having mirror image copies made of the Evidence. Having said that, any attempt to replicate electronic data without adhering to best practices for data replication could compromise the integrity or contents of such data. Simply making "hard copies" of such Evidence or transforming it to other formats (such as TIFF, or PDF documents) does not constitute preservation of such Evidence. We are prepared to discuss with you proper protocols for replication before you attempt to copy Evidence. The Commission may be able to retain and supervise computer forensic resources to properly and non-invasively create back-up images of Evidence.

In addition to preserving the Evidence described above, we further request that you take no action to delete or otherwise compromise any content existing on social networking websites such as "Facebook" or "LinkedIn." Moreover, we request that you take no affirmative action to delete any emails, even emails that may not fit within the parameters set forth above.

*       *       *

Mr. Michael J. French
December 14, 2022
Page 4


While we recognize that this may impose a burden on you, it is absolutely necessary that you fully comply with your obligations to reasonably retain and preserve Evidence. We appreciate your efforts in this regard.  I have enclosed a copy of the Commission's Form 1662, which contains a list of the routine uses that may be made of information furnished to the Commission.

Please contact me at (404) 539-8812 or mogang@sec.gov if you have any questions, or to meet-and-confer about the matters discussed above. Further, please acknowledge your receipt of this letter by sending me an email or by returning a copy of this letter with your signature in the space provided below.


Sincerely,

*Grant Mogan*

Grant Mogan
Senior Counsel

Enclosure: SEC Form 1662


I acknowledge that I received this letter
on the __ day of _____, 2022:


_____



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA 30326-1382

ATLANTA
REGIONAL OFFICE

January 11, 2023

**Via UPS**

Mr. Michael French
████████████████████
Pendleton, SC ████████

Mr. Michael French
████████████████████
Pendleton, SC ████████

> **Re:    In the Matter of MJF Capital, LLC  (A-04041)**

Dear Mr. French:

Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents issued to you, in connection with the above-referenced formal investigation. The subpoena requires you to produce documents by January 25, 2023 to the SEC's Centralized Production Unit, 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750.

Please send the materials to:

> ENF-CPU (U.S. Securities & Exchange Commission)
> 14420 ALBEMARLE POINT PL
> Suite 102
> CHANTILLY, VA 20151-1750

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

Please also provide a duplicate copy of any document production cover letters to me at mogang@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents.  In

**EXHIBIT
L**

particular, if your client prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the document subpoena, including all metadata, should also be produced in their native software format.** If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should state to which paragraph(s) in the subpoena attachment each item responds. Please also state in the cover letter(s) whether you believe your client has met its obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

Please also provide a narrative description describing what was done to identify and collect documents responsive to the subpoena. At a minimum, the narrative should describe:

- who searched for documents;
- who reviewed documents found to determine whether they were responsive;
- which custodians were searched;
- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, storage facilities, home offices, work offices, voice mails, home email, webmail, work email, backup tapes or other media);
- what search terms, if any, were employed to identify responsive documents;
- what firms and/or persons, if any, assisted in analyzing the data collected;
- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and
- where the original electronic and hardcopy documents are maintained and by whom.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation and the subpoena do not mean that we have concluded that your client or anyone else has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security. Enclosed are copies of the Commission's Form 1662 entitled "Supplemental Information for Persons Requested to

Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." Form 1662 explains how we may use the information your client provides to the Commission and has other important information.  Please provide a copy of this form to your client.

If you have any questions or would like to discuss this matter, you may call me at 404-842-7693 or email me at mogang@sec.gov.


Sincerely,

*Grant Mogan*

Grant Mogan
Senior Counsel
Division of Enforcement


Enclosures:     Subpoena and Attachment
                SEC Data Delivery Standards
                SEC Form 1662



## SUBPOENA
# UNITED STATES OF AMERICA
### SECURITIES AND EXCHANGE COMMISSION

Re:     In the Matter of MJF Capital, LLC (A-04041)

To:     Mr. Michael J. French

▇▇▇▇▇▇▇▇▇▇▇▇

Pendleton, SC ▇▇▇▇

Mr. Michael French

▇▇▇▇▇▇▇▇▇▇▇▇

Pendleton, SC ▇▇▇▇

---

**YOU MUST PRODUCE** everything specified in Exhibit A attached to this subpoena to officers of the U.S. Securities and Exchange Commission at the place, date and time specified below: U.S. Securities and Exchange Commission, to the Centralized Production Unit, 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750 no later than January 25, 2023.

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By:     *Grant Mogan*                    Date:   January 11, 2023

Grant Mogan
Senior Counsel
Division of Enforcement

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

---

NOTICE TO WITNESS:        If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

<u>**EXHIBIT A**</u>

**ATTACHMENT TO SUBPOENA**

**In the Matter of MJF Capital, LLC (A-04041)**

**January 11, 2023**

**I.  <u>Instructions</u>**

**1.**     Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form.  **Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All responsive electronic Documents, including all metadata, should also be produced in their native software format.**

2.     For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals.  The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards.  Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.  The staff may later request or require that you produce the originals.

3.     Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.     In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.     Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request.  In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.     Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the time periods identified in this subpoena, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter.  If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.     **This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below**.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing.  The list should describe each item separately, noting:

    a.      its author(s);
    b.      its date;
    c.      its subject matter;
    d.      the name of the Person who has the item now, or the last Person known to have it;
    e.      the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
    f.      the basis upon which you are not producing the responsive Document;
    g.      the specific request in the subpoena to which the Document relates;
    h.      the attorney(s) and the client(s) involved; and
    i.      in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

11.     If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## II.  <u>Definitions</u>

For the purpose of this subpoena, the following definitions apply:

1.      **French Entities**.  The term "French Entities" means any entity for which you serve as an officer, director, manager, managing member, and/or controlling shareholder, member, or owner, including, but not limited to:

    a.  MJF Capital, LLC;
    b.  MJF Holdings, LLC;
    c.  MJF Marketing, LLC;

    d.  MJF Insurance & Finance, LLC;
    e.  Money Just Flows, LLC;
    f.  Future Funders, LLC;
    g.  Bandbox Capital, LLC;
    h.  Bandbox Homes, LLC;
    i.  Dugout Enterprises, LLC;
    j.  Dugout Capital LLC;
    k.  Dugout Cashflow LLC;
    l.  Dugout Solutions LLC;
    m.  FISBIS LLC;
    n.  Gradesky Ecom LLC;
    o.  Hoventa Products LLC;
    p.  Kashic Products LLC;
    q.  Lets Go Waffles LLC;
    r.  MWL Capital LLC;
    s.  MWL Cashflow LLC;
    t.  MWL Enterprises LLC;
    u.  MWL Solutions LLC;
    v.  Papi Chino LLC;
    w.  Quantum Capital LLC;
    x.  Quantum CashFlow LLC;
    y.  Quantum Enterprises LLC;
    z.  Sonetim Online LLC;
    aa. 351 Welborn Drive LLC;
    bb. 211 Crooked Cedar Way LLC;
    cc. 313 Sliding Rock Drive LLC;
    dd. 52 Rivermont Road LLC;
    ee. 302 Keithwood Drive LLC;
    ff.  112 Bayview Way LLC; and
    gg. 208 Sears Street LLC

2.   **You and Your**.  The terms "you" and "your" refer to Michael J. French, and any persons or entities acting on behalf of Michael J. French.

3.   **Communication**.  The term "communication" means the transmittal, or attempted transmittal, of any information (in the form of facts, ideas, inquiries or otherwise), regardless of method of transmittal.

4.   **Document**.  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in <u>Federal Rule of Civil Procedure 34(a)</u>.  It includes, without limitation, handwritten/typewritten notes, <u>emails</u>, memoranda, correspondence, power points, calendars, agendas, notebooks spreadsheets, diary entries, or any other electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

5.  **Agreement.**   The term "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

6.  **Concerning**.  The term "concerning" means relating to, referring to, describing, evidencing or constituting.

7.  **All/Each**.  The terms "all" and "each" shall be construed as all and each.

8.  **And/Or**.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this discovery request all responses that might otherwise be construed to be outside of its scope.

### Documents to be Produced

Please produce the following Documents and information, for the time period January 1, 2018 to the date of this request (the "Relevant Period"):

1.  For **each** French Entity:

    a.  Documents sufficient to disclose the corporate structure of the French Entity, including, but not limited to, the date and place of establishment, organization, and, if applicable, incorporation;

    b.  Documents sufficient to identify all officers, directors, principals, owners, shareholders, members, employees, and all others acting on behalf of the French Entity, and Documents sufficient to disclose, for each individual identified in response to this Item:

        i.   title;

        ii.  dates of affiliation with the French Entity;

        iii. current or last known home address and telephone number;

        iv.  current or last known employment address and telephone number; and

        v.   salary or other compensation received from the French Entity.

    c.  the French Entity's policies and procedures.

4

d.   Documents sufficient to disclose all domestic and foreign bank, brokerage, crypto-asset, or other financial accounts held by or on behalf of the French Entity, or used for the French Entity's business.

e.   Account opening Documents and monthly account statements for all accounts identified in response to Item 1.d.

f.   Documents sufficient to disclose all other assets held by or on behalf of the French Entity.

g.   Documents sufficient to identify all investors in the French Entity, regardless of the form of investment (e.g., stock, bond, promissory note, limited partnership interest, investment contract, etc.), by name, address, and telephone number.

h.   For each investor identified in response to Item 1.g above, Documents sufficient to disclose:

   i.   the French Entity in which the investment was made;

   ii.   the amount invested;

   iii.   the current balance(s) of each investment;

   iv.   the nature of each investment – i.e., stock, promissory note, limited partnership interest, investment contract, etc.;

   v.   the date(s) of investments; and

   vi.   whether, when, and how much of each investor's principal has been returned to them;

i.   For each investor identified in response to Item 1.g above, all Documents Concerning Agreements or contracts between the French Entity and the investor and all Documents Concerning the terms of investments.

j.   For each investor identified in response to Item 1.g above, all periodic or other account statements.

k.   For each investor identified in response to Item 1.g above, all Documents Concerning the investment or other use of their funds by the MJF Entity and the current location of investor funds.

l.   Documents sufficient to identify all individuals or entities who were solicited as potential investors but did not ultimately invest in the MJF Entity.

m.   All Communications and Documents Concerning Communications between the MJF Entity and its MJF Holdings and investors or potential investors.

n.  All Documents Concerning marketing and/or promotional materials used in connection with soliciting investors in the MJF Entity.  Responsive Documents should include, but are not limited to, private placement memoranda, presentations, Communications, notes of meetings, draft Agreements, and any other Documents provided to potential or actual investors in connection with any potential or actual investment.

o.  Audited financial statements for the MJF Entity.

p.  Annual balance sheets, income statements, and cash flow statements, and monthly balance sheets, income statements, and cash flow statements for any period for which annual statements are not available.

q.  General and auxiliary ledgers on an annual basis, and monthly ledgers for any period for which annual ledgers are not available.

r.  All Communications between the MJF Entity and:

    i.  American Estate & Trust, Inc.;

    ii.  Provident Trust Group, LLC; and/or

    iii.  Quest Education, L.LC.

s.  All Agreements between the MJF Entity and:

    i.  American Estate & Trust, Inc.;

    ii.  Provident Trust Group, LLC; and/or

    iii.  Quest Education, L.LC.

t.  All Communications sent or received by:

    i.  Michael French;

    ii.  Denise French;

    iii.  Heather Edwards

    iv.  Sarah Keels

    v.  Constance (Connie) Mumford

    vi.  Aishvary Patel; and

    vii.  Jennifer Wakefield

2.  All Communications sent or received by you.

3. All social media posts made by you, regardless of the platform.

4. Documents sufficient to disclose all domestic and foreign bank, brokerage, crypto-asset, or other financial accounts held by you or on your behalf, or accessed or used by you.

5. Account opening Documents and monthly account statements for all accounts identified in response to Item 4.

6. Documents sufficient to disclose all other assets held by you or on your behalf.



## U.S. Securities and Exchange Commission

## Data Delivery Standards

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).  ***Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.***

General Instructions.................................................................................................................................1

Delivery Formats ................................................................................................................................... 2

   I.  Imaged Productions.......................................................................................................................... 3

      1.  Images ..................................................................................................................................... 3

      2.  Image Cross-Reference File ................................................................................................... 3

      3.  Data File ................................................................................................................................. 3

      4.  Text ........................................................................................................................................ 3

      5.  Linked Native Files................................................................................................................ 3

   II.  Native File Productions without Load Files ................................................................................... 4

   III.  Adobe PDF File Productions ......................................................................................................... 4

   IV.  Audio Files .................................................................................................................................... 4

   V.  Video Files..................................................................................................................................... 4

   VI.  Electronic Trade and Bank Records............................................................................................... 4

   VII.  Electronic Phone Records ............................................................................................................ 4

   VIII.  Audit Workpapers ...................................................................................................................... 5

   IX.  Mobile Device Data ...................................................................................................................... 5

**General Instructions**

Due to COVID-19 restrictions the current, temporary mailing address for all physical productions sent to the SEC is:
**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet.  *(Note:  An Adobe PDF file is not considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF).  If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

Rev 8/2021

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
   a. Case number, case name and requesting SEC staff member name
   b. A list of each piece of media included in the production with its unique production volume number
   c. A list of custodians, identifying the Bates range for each custodian
   d. The time zone in which the emails were standardized during conversion
   e. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

U.S. Securities and Exchange Commission
Data Delivery Standards

## Delivery Formats

### I.   Imaged Productions

The SEC prefers that all scanned paper and electronic format be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

1.   **Images**

   a.   Black and white images must be 300 DPI Group IV single-page TIFF files
   b.   Color images must be produced in JPEG format
   c.   File names cannot contain embedded spaces or special characters (including the comma)
   d.   Folder names cannot contain embedded spaces or special characters (including the comma)
   e.   All image files must have a unique file name, i.e. Bates number
   f.   Images must be endorsed with sequential Bates numbers in the lower right corner of each image
   g.   The number of image files per folder should not exceed 2,000 files
   h.   Excel spreadsheets should have a placeholder image named by the Bates number of the file
   i.   AUTOCAD/photograph files should be produced as a single page JPEG file

2.   **Image Cross-Reference File**

   The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

   *ImageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount*

3.   **Data File**

   The data file (.DAT) contains all of the fielded information that will be loaded into the database.

   a.   The first line of the .DAT file must be a header row identifying the field names
   b.   The .DAT file must use the following *Concordance®* default delimiters:
         Comma ¶ ASCII character (020)
         Quote þ ASCII character (254)
   c.   If the .DAT file is produced in Unicode format it must contain the byte order marker
   d.   Date fields should be provided in the format: mm/dd/yyyy
   e.   Date and time fields must be two separate fields
   f.   The time zone must be included in all time fields
   g.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
   h.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. Do not include the text in the .DAT file.
   i.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
   j.   BEGATTACH and ENDATTACH fields must be named after the FIRSTBATES.
   k.   A complete list of metadata fields is available in **Addendum A** to this document

4.   **Text**

   Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

5.   **Linked Native Files**

   Copies of original email and native file documents/attachments must be included for all electronic productions.
   a.   Native file documents must be named per the FIRSTBATES number
   b.   The full path of the native file must be provided in the .DAT file for the LINK field
   c.   The number of native files per folder should not exceed 2,000 files

**II.    Native File Production without Load Files**

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

**III.   Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

1. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.   Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:          Caller's name or account/identification number
2) Originating Number:   Caller's phone number
3) Called Party Name:    Called party's name
4) Terminating Number:   Called party's phone number
5) Date:                 Date of call
6) Time:                 Time of call
7) Filename:             Filename of audio file

**V.    Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.   Electronic Trade and Bank Records**

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.  Electronic Phone Records**

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

**VIII. Audit Workpapers**

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

**IX. Mobile Device Data**

Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format.

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

| | | |
|---|---|---|
| LINK | D:\001\ EDC0000001 msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br>Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone<br>**This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone<br>**This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |

Rev 8/2021

| | | |
|---|---|---|
| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date:  Mon, 23 Aug 2005 11:40:36 -400 From:        Taylor        Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To:        Jon        Smith <example_to@mail.dc.edu> Subject:Business  Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

## **ADDENDUM B**

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1)  Account Number
2)  Connection Date – Date the call was received or made
3)  Connection Time – Time call was received or made
4)  Seizure Time – Time it took for the call to be placed in seconds
5)  Originating Number – Phone that placed the call
6)  Terminating Number – Phone that received the call
7)  Elapsed Time – The length of time the call lasted, preferably in seconds
8)  End Time – The time the call ended
9)  Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:

1)  Account Number
2)  Connection Date – Date the text was received or made
3)  Connection Time – Time text was received or made
4)  Originating Number – Who placed the text
5)  Terminating Number – Who received the text
6)  IMEI Originating – Unique id to phone used to make text
7)  IMEI Terminating– Unique id to phone used to receive text
8)  IMSI Originating - Unique id to phone used to make text
9)  IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable


For Mobile Data Usage:

1)  Account Number
2)  Connection Date – Date the data was received or made
3)  Connection Time – Time data was received or made
4)  Originating number – Number that used data
5)  IMEI Originating – Unique id of phone that used data
6)  IMSI Originating - Unique id of phone that used data
7)  Data or Data codes – Identify data direction, or other data routing information
8)  Time Zone – Time Zone in which the call was received or placed, if applicable

Rev 8/2021

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

**A.  False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W] hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

**B.  Testimony**

If your testimony is taken, you should be aware of the following:

1.  *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's direction.

2.  *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3.  *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4.  *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--
>
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare,

SEC 1662 (09-21)

depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.  *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.  *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E.  Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F.  Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G.  Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H.  Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection,

including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
950 EAST PACES FERRY ROAD, N.E., SUITE 900
ATLANTA, GA 30326-1382

**ATLANTA**
**REGIONAL OFFICE**

January 11, 2023

**Via UPS**

MJF Holdings, LLC
c/o Mr. Michael J. French
█████████████
Pendleton, SC ████

MJF Holdings, LLC
c/o Mr. Michael French
█████████████
Pendleton, SC ████

MJF Holdings, LLC
c/o Mr. Michael French
Manager
141 Traction Street, Suite 47
Greenville, SC  29611

MJF Holdings, LLC
c/o Mr. Ira S. Levine
1671 W. Horizon Ridge Parkway
Suite 230
Henderson, NV  89012

Re:   **In the Matter of MJF Capital, LLC  (A-04041)**

Dear Messrs. French and Levine:

Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents issued to MJF Holdings, LLC, in connection with the above-referenced formal investigation.  The subpoena requires MJF Holdings, LLC to produce documents by January 25, 2023 to the SEC's Centralized Production Unit, 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750.

Please send the materials to:

ENF-CPU (U.S. Securities & Exchange Commission)
14420 ALBEMARLE POINT PL
Suite 102
CHANTILLY, VA 20151-1750

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

**EXHIBIT**
**M**

Please also provide a duplicate copy of any document production cover letters to me at mogang@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if your client prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the document subpoena, including all metadata, should also be produced in their native software format.** If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should state to which paragraph(s) in the subpoena attachment each item responds. Please also state in the cover letter(s) whether you believe your client has met its obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

Please also provide a narrative description describing what was done to identify and collect documents responsive to the subpoena. At a minimum, the narrative should describe:

- who searched for documents;
- who reviewed documents found to determine whether they were responsive;
- which custodians were searched;
- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, storage facilities, home offices, work offices, voice mails, home email, webmail, work email, backup tapes or other media);
- what search terms, if any, were employed to identify responsive documents;
- what firms and/or persons, if any, assisted in analyzing the data collected;
- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and
- where the original electronic and hardcopy documents are maintained and by whom.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

This investigation is a non-public, fact-finding inquiry.  We are trying to determine whether there have been any violations of the federal securities laws.  The investigation and the subpoena do not mean that we have concluded that your client or anyone else has violated the law.  Also, the investigation does not mean that we have a negative opinion of any person, entity or security.  Enclosed are copies of the Commission's Form 1662 entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena."  Form 1662 explains how we may use the information your client provides to the Commission and has other important information.  Please provide a copy of this form to your client.

If you have any questions or would like to discuss this matter, you may call me at 404-842-7693 or email me at mogang@sec.gov.

Sincerely,

*Grant Mogan*

Grant Mogan
Senior Counsel
Division of Enforcement

Enclosures:    Subpoena and Attachment
               SEC Data Delivery Standards
               SEC Form 1662



## SUBPOENA
# UNITED STATES OF AMERICA
### SECURITIES AND EXCHANGE COMMISSION

Re:    In the Matter of MJF Capital, LLC (A-04041)

To:    MJF Holdings, LLC
    c/o Mr. Michael J. French
    �letterbox
    Pendleton, SC  ▮

    MJF Holdings, LLC
    c/o Mr. Michael French
    ▮
    Pendleton, SC  ▮

MJF Holdings, LLC
c/o Mr. Michael French
Manager
141 Traction Street, Suite 47
Greenville, SC  29611

MJF Holdings, LLC
c/o Mr. Ira S. Levine
1671 W. Horizon Ridge Parkway
Suite 230
Henderson, NV  89012

**YOU MUST PRODUCE** everything specified in Exhibit A attached to this subpoena to officers of the U.S. Securities and Exchange Commission at the place, date and time specified below: U.S. Securities and Exchange Commission, to the Centralized Production Unit, 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750 no later than January 25, 2023.

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By:  _Grant Mogan_____          Date:   January 11, 2023
    Grant Mogan
    Senior Counsel
    Division of Enforcement

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter.  The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:        If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

<u>**EXHIBIT A**</u>

**ATTACHMENT TO SUBPOENA**

**In the Matter of MJF Capital, LLC (A-04041)**

**January 11, 2023**

## I.  <u>Instructions</u>

**1.**     Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form.  **Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All responsive electronic Documents, including all metadata, should also be produced in their native software format.**

2.     For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals.  The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards.  Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.  The staff may later request or require that you produce the originals.

3.     Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.     In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.     Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request.  In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.     Documents should be labeled with sequential numbering (bates-stamped).

7.     You must produce all Documents created during, or Concerning, the time periods identified in this subpoena, unless otherwise specified.

8.     The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.     You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter.  If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.    **This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below**.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing.  The list should describe each item separately, noting:

   a.     its author(s);
   b.     its date;
   c.     its subject matter;
   d.     the name of the Person who has the item now, or the last Person known to have it;
   e.     the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
   f.     the basis upon which you are not producing the responsive Document;
   g.     the specific request in the subpoena to which the Document relates;
   h.     the attorney(s) and the client(s) involved; and
   i.     in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

11.    If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## II.   <u>Definitions</u>

For the purpose of this subpoena, the following definitions apply:

1.     **MJF Holdings, you,** or **your**.  The terms "MJF Holdings" "you," or "your" mean MJF Holdings, LLC and any related MJF entity, including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, and includes all persons and entities acting on MJF Holdings' behalf.

2

2.  **Communication**.  The term "communication" means the transmittal, or attempted transmittal, of any information (in the form of facts, ideas, inquiries or otherwise), regardless of method of transmittal.

3.  **Document**.  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).  It includes, without limitation, handwritten/typewritten notes, emails, memoranda, correspondence, power points, calendars, agendas, notebooks spreadsheets, diary entries, or any other electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

4.  **Agreement.**   The term "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

5.  **Concerning**.  The term "concerning" means relating to, referring to, describing, evidencing or constituting.

6.  **All/Each**.  The terms "all" and "each" shall be construed as all and each.

7.  **And/Or**.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this discovery request all responses that might otherwise be construed to be outside of its scope.

## Documents to be Produced

Please produce the following Documents and information, for the time period January 1, 2018 to the date of this request (the "Relevant Period"):

1.  Documents sufficient to disclose the corporate structure of MJF Holdings, including, but not limited to, the date and place of establishment, organization, and, if applicable, incorporation;

2.  Documents sufficient to identify all officers, directors, principals, owners, shareholders, members, employees, and all others acting on behalf of MJF Holdings, and Documents sufficient to disclose, for each individual identified in response to this Item:

    a.  title;

    b.  dates of affiliation with MJF Holdings;

  c. current or last known home address and telephone number;

  d. current or last known employment address and telephone number; and

  e. salary or other compensation received from MJF Holdings.

3. MJF Holdings' policies and procedures.

4. Documents sufficient to disclose all domestic and foreign bank, brokerage, crypto-asset, or other financial accounts held by or on behalf of MJF Holdings, or used for MJF Holdings business.

5. Account opening Documents and monthly account statements for all accounts identified in response to Item 4.

6. Documents sufficient to disclose all other assets held by or on behalf of MJF Holdings.

7. Documents sufficient to identify all investors in MJF Holdings, regardless of the form of investment (e.g., stock, bond, promissory note, limited partnership interest, investment contract, etc.), by name, address, and telephone number.

8. For each investor identified in response to Item 7 above, Documents sufficient to disclose:

  a. the amount invested;

  b. the current balance(s) of each investment;

  c. the nature of the each investment – i.e., stock, promissory note, limited partnership interest, investment contract, etc.;

  d. the date(s) of investments; and

  e. whether, when, and how much of each investor's principal has been returned to them.

9. For each investor identified in response to Item 7 above, all Documents Concerning Agreements or contracts between MJF Holdings and the investor and all Documents Concerning the terms of investments.

10. For each investor identified in response to Item 7 above, all periodic or other account statements.

11. For each investor identified in response to Item 7 above, all Documents Concerning the investment or other use of their funds by MJF Holdings and the current location of investor funds.

12. Documents sufficient to identify all individuals or entities who were solicited as potential investors but did not ultimately invest in MJF Holdings.

13.    All Communications and Documents Concerning Communications between MJF Holdings and investors or potential investors in MJF Holdings.

14.    All Documents Concerning marketing and/or promotional materials used in connection with soliciting investors in MJF Holdings.  Responsive Documents should include, but are not limited to, private placement memoranda, presentations, Communications, notes of meetings, draft Agreements, and any other Documents provided to potential or actual investors in connection with any potential or actual investment.

15.    Audited financial statements for MJF Holdings.

16.    Annual balance sheets, income statements, and cash flow statements, and monthly balance sheets, income statements, and cash flow statements for any period for which annual statements are not available.

17.    General and auxiliary ledgers on an annual basis, and monthly ledgers for any period for which annual ledgers are not available.

18.    All Communications between MJF Holdings and:

    a.   American Estate & Trust, Inc.;

    b.   Provident Trust Group, LLC; and/or

    c.   Quest Education, L.LC.

19.    All Agreements between MJF Holdings and:

    a.   American Estate & Trust, Inc.;

    b.   Provident Trust Group, LLC; and/or

    c.   Quest Education, L.LC.

20.    All Communications sent or received by:

    a.   Michael French;

    b.   Denise French;

    c.   Heather Edwards

    d.   Sarah Keels

    e.   Constance (Connie) Mumford

    f.   Aishvary Patel; and

    g.   Jennifer Wakefield



## U.S. Securities and Exchange Commission

## Data Delivery Standards

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.***

General Instructions...................................................................................................................... 1

Delivery Formats ......................................................................................................................... 2

   I.  Imaged Productions................................................................................................................3

      1.  Images............................................................................................................................ 3

      2.  Image Cross-Reference File ......................................................................................... 3

      3.  Data File ....................................................................................................................... 3

      4.  Text............................................................................................................................... 3

      5.  Linked Native Files...................................................................................................... 3

  II.  Native File Productions without Load Files ......................................................................... 4

 III.  Adobe PDF File Productions ............................................................................................... 4

 IV.  Audio Files............................................................................................................................ 4

  V.  Video Files ............................................................................................................................ 4

 VI.  Electronic Trade and Bank Records..................................................................................... 4

VII.  Electronic Phone Records .................................................................................................... 4

VIII.  Audit Workpapers ................................................................................................................ 5

 IX.  Mobile Device Data ............................................................................................................ 5

**General Instructions**

Due to COVID-19 restrictions the current, temporary mailing address for all <u>physical productions</u> sent to the SEC is:
**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF).  If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

Rev 8/2021

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
   a. Case number, case name and requesting SEC staff member name
   b. A list of each piece of media included in the production with its unique production volume number
   c. A list of custodians, identifying the Bates range for each custodian
   d. The time zone in which the emails were standardized during conversion
   e. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

**\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

**Delivery Formats**

I.   **Imaged Productions**
The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

1.   **Images**
   a.   Black and white images must be 300 DPI Group IV single-page TIFF files
   b.   Color images must be produced in JPEG format
   c.   File names cannot contain embedded spaces or special characters (including the comma)
   d.   Folder names cannot contain embedded spaces or special characters (including the comma)
   e.   All image files must have a unique file name, i.e. Bates number
   f.   Images must be endorsed with sequential Bates numbers in the lower right corner of each image
   g.   The number of image files per folder should not exceed 2,000 files
   h.   Excel spreadsheets should have a placeholder image named by the Bates number of the file
   i.   AUTOCAD/photograph files should be produced as a single page JPEG file

2.   **Image Cross-Reference File**
The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

   *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

3.   **Data File**
The data file (.DAT) contains all of the fielded information that will be loaded into the database.

   a.   The first line of the .DAT file must be a header row identifying the field names
   b.   The .DAT file must use the following *Concordance®* default delimiters:
      Comma ¶ ASCII character (020)
      Quote þ ASCII character (254)
   c.   If the .DAT file is produced in Unicode format it must contain the byte order marker
   d.   Date fields should be provided in the format: mm/dd/yyyy
   e.   Date and time fields must be two separate fields
   f.   The time zone must be included in all time fields
   g.   If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
   h.   An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the FIRSTBATES.  Do not include the text in the .DAT file.
   i.   For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
   j.   BEGATTACH and ENDATTACH fields must be two separate fields
   k.   A complete list of metadata fields is available in **Addendum A** to this document

4.   **Text**
Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

5.   **Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.
   a.   Native file documents must be named per the FIRSTBATES number
   b.   The full path of the native file must be provided in the .DAT file for the LINK field
   c.   The number of native files per folder should not exceed 2,000 files

**II.   Native File Production without Load Files**

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

**III.   Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

1.  All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2.  PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3.  All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4.  If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.   Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1)  Caller Name:           Caller's name or account/identification number
2)  Originating Number:  Caller's phone number
3)  Called Party Name:    Called party's name
4)  Terminating Number:  Called party's phone number
5)  Date:                 Date of call
6)  Time:                 Time of call
7)  Filename:             Filename of audio file

**V.   Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.   Electronic Trade and Bank Records**

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2.  Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.   Electronic Phone Records**

When producing electronic phone records, provide the files in the following format:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
    a.  The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column.  For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

**VIII. Audit Workpapers**

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

**IX. Mobile Device Data**

Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format.

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty) Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty) Native: Time the document was created including time zone **This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email: (empty) Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty) Native: Time the document was last modified including the time zone **This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email: (empty) Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty) Native: Time the document was last accessed including the time zone **This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email: (empty) Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID Native: (empty) |

Rev 8/2021

| | | |
|---|---|---|
| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

Rev 8/2021

# **ADDENDUM B**

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable

For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

Rev 8/2021

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

## A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
>> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
>> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

## B. Testimony

If your testimony is taken, you should be aware of the following:

1.  *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2.  *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3.  *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4.  *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--

> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare,

SEC 1662 (09-21)

depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.   *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E.  Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F.  Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily*. There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G.  Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H.  Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection,

including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
950 EAST PACES FERRY ROAD, N.E., SUITE 900
ATLANTA, GA 30326-1382

**ATLANTA**
**REGIONAL OFFICE**

January 11, 2023

**Via UPS**

MJF Capital, LLC
c/o Mr. Michael French
████████████████████████
Pendleton, SC ████████

MJF Capital, LLC
c/o Mr. Michael French
██████████████████
Pendleton, SC ████████

  **Re:**  **In the Matter of MJF Capital, LLC  (A-04041)**

Dear Mr. French:

  Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents issued to MJF Capital, LLC, in connection with the above-referenced formal investigation.  The subpoena requires MJF Capital, LLC to produce documents by January 25, 2023 to the SEC's Centralized Production Unit, 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750.

Please send the materials to:

    ENF-CPU (U.S. Securities & Exchange Commission)
    14420 ALBEMARLE POINT PL
    Suite 102
    CHANTILLY, VA 20151-1750

  For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

  Please also provide a duplicate copy of any document production cover letters to me at mogang@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

**EXHIBIT**

**N**

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents.  In particular, if your client prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto.  All electronic documents responsive to the document subpoena, including all metadata, should also be produced in their native software format.**  If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send.  The list should state to which paragraph(s) in the subpoena attachment each item responds.  Please also state in the cover letter(s) whether you believe your client has met its obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

Please also provide a narrative description describing what was done to identify and collect documents responsive to the subpoena.  At a minimum, the narrative should describe:

- who searched for documents;
- who reviewed documents found to determine whether they were responsive;
- which custodians were searched;
- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, storage facilities, home offices, work offices, voice mails, home email, webmail, work email, backup tapes or other media);
- what search terms, if any, were employed to identify responsive documents;
- what firms and/or persons, if any, assisted in analyzing the data collected;
- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and
- where the original electronic and hardcopy documents are maintained and by whom.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

This investigation is a non-public, fact-finding inquiry.  We are trying to determine whether there have been any violations of the federal securities laws.  The investigation and the subpoena do not mean that we have concluded that your client or anyone else has violated the law.  Also, the investigation does not mean that we have a

2

negative opinion of any person, entity or security.  Enclosed are copies of the
Commission's Form 1662 entitled "Supplemental Information for Persons Requested to
Supply Information Voluntarily or Directed to Supply Information Pursuant to a
Commission Subpoena."  Form 1662 explains how we may use the information your
client provides to the Commission and has other important information.  Please provide a
copy of this form to your client.

If you have any questions or would like to discuss this matter, you may call me at
404-842-7693 or email me at mogang@sec.gov.

Sincerely,

*Grant Mogan*

Grant Mogan
Senior Counsel
Division of Enforcement

Enclosures:     Subpoena and Attachment
                SEC Data Delivery Standards
                SEC Form 1662



**SUBPOENA**

# UNITED STATES OF AMERICA

## SECURITIES AND EXCHANGE COMMISSION

Re:    In the Matter of MJF Capital, LLC (A-04041)

To:    MJF Capital, LLC
        c/o Mr. Michael J. French
        █████████████

        Pendleton, SC ████

        MJF Capital, LLC
        c/o Mr. Michael French
        █████████████

        Pendleton, SC ████

**YOU MUST PRODUCE** everything specified in Exhibit A attached to this subpoena to officers of the U.S. Securities and Exchange Commission at the place, date and time specified below: U.S. Securities and Exchange Commission, to the Centralized Production Unit, 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750 no later than January 25, 2023.

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**

If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By:    _Grant Mogan_                   Date:  January 11, 2023

        Grant Mogan
        Senior Counsel
        Division of Enforcement

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:    If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

<u>**EXHIBIT A**</u>

**ATTACHMENT TO SUBPOENA**

**In the Matter of MJF Capital, LLC (A-04041)**

**January 11, 2023**

**I.  <u>Instructions</u>**

**1.**    Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form.  **Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All responsive electronic Documents, including all metadata, should also be produced in their native software format.**

2.    For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals.  The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards.  Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.  The staff may later request or require that you produce the originals.

3.    Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.    In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.    Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request.  In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.    Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the time periods identified in this subpoena, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter.  If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.     **This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below**.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing.  The list should describe each item separately, noting:

    a.      its author(s);
    b.      its date;
    c.      its subject matter;
    d.      the name of the Person who has the item now, or the last Person known to have it;
    e.      the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
    f.      the basis upon which you are not producing the responsive Document;
    g.      the specific request in the subpoena to which the Document relates;
    h.      the attorney(s) and the client(s) involved; and
    i.      in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

11.     If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## II.  <u>Definitions</u>

For the purpose of this subpoena, the following definitions apply:

1.      **MJF Capital, you,** or **your**.  The terms "MJF Capital" "you," or "your" mean MJF Capital, LLC and any related entity, including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, and includes all persons and entities acting on MJF Capital's behalf.

2. **Communication**.  The term "communication" means the transmittal, or attempted transmittal, of any information (in the form of facts, ideas, inquiries or otherwise), regardless of method of transmittal.

3. **Document**.  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in <u>Federal Rule of Civil Procedure 34(a)</u>.  It includes, without limitation, handwritten/typewritten notes, <u>emails</u>, memoranda, correspondence, power points, calendars, agendas, notebooks spreadsheets, diary entries, or any other electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

4. **Agreement.**   The term "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

5. **Concerning**.  The term "concerning" means relating to, referring to, describing, evidencing or constituting.

6. **All/Each**.  The terms "all" and "each" shall be construed as all and each.

7. **And/Or**.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this discovery request all responses that might otherwise be construed to be outside of its scope.

## <u>Documents to be Produced</u>

Please produce the following Documents and information, for the time period January 1, 2018 to the date of this request (the "Relevant Period"):

1. Documents sufficient to disclose the corporate structure of MJF Capital, including, but not limited to, the date and place of establishment, organization, and, if applicable, incorporation;

2. Documents sufficient to identify all officers, directors, principals, owners, shareholders, members, employees, and all others acting on behalf of MJF Capital, and Documents sufficient to disclose, for each individual identified in response to this Item:

   a. title;

   b. dates of affiliation with MJF Capital;

3

    c.   current or last known home address and telephone number;

    d.   current or last known employment address and telephone number; and

    e.   salary or other compensation received from MJF Capital during the.

3.    MJF Capital's policies and procedures.

4.    Documents sufficient to disclose all domestic and foreign bank, brokerage, crypto-asset, or other financial accounts held by or on behalf of MJF Capital, or used for MJF Capital business.

5.    Account opening Documents and monthly account statements for all accounts identified in response to Item 4.

6.    Documents sufficient to disclose all other assets held by or on behalf of MJF Capital.

7.    Documents sufficient to identify all investors in MJF Capital, regardless of the form of investment (e.g., stock, bond, promissory note, limited partnership interest, investment contract, etc.), by name, address, and telephone number.

8.    For each investor identified in response to Item 7 above, Documents sufficient to disclose:

    a.   the amount invested;

    b.   the current balance(s) of each investment;

    c.   the nature of the each investment – i.e., stock, promissory note, limited partnership interest, investment contract, etc.;

    d.   the date(s) of investments; and

    e.   whether, when, and how much of each investor's principal has been returned to them.

9.    For each investor identified in response to Item 7 above, all Documents Concerning Agreements or contracts between MJF Capital and the investor and all Documents Concerning the terms of investments.

10.    For each investor identified in response to Item 7 above, all periodic or other account statements.

11.    For each investor identified in response to Item 7 above, all Documents Concerning the investment or other use of their funds by MJF Capital and the current location of investor funds.

12.    Documents sufficient to identify all individuals or entities who were solicited as potential investors but did not ultimately invest in MJF Capital.

4

13.    All Communications and Documents Concerning Communications between MJF Capital and investors or potential investors in MJF Capital.

14.    All Documents Concerning marketing and/or promotional materials used in connection with soliciting investors in MJF Capital.  Responsive Documents should include, but are not limited to, private placement memoranda, presentations, Communications, notes of meetings, draft Agreements, and any other Documents provided to potential or actual investors in connection with any potential or actual investment.

15.    Audited financial statements for MJF Capital.

16.    Annual balance sheets, income statements, and cash flow statements, and monthly balance sheets, income statements, and cash flow statements for any period for which annual statements are not available.

17.    General and auxiliary ledgers on an annual basis, and monthly ledgers for any period for which annual ledgers are not available.

18.    All Communications between MJF Capital and:

    a.  American Estate & Trust, Inc.;

    b.  Provident Trust Group, LLC; and/or

    c.  Quest Education, L.LC.

19.    All Agreements between MJF Capital and:

    a.  American Estate & Trust, Inc.;

    b.  Provident Trust Group, LLC; and/or

    c.  Quest Education, L.LC.

20.    All Communications sent or received by:

    a.  Michael French;

    b.  Denise French;

    c.  Heather Edwards

    d.  Sarah Keels

    e.  Constance (Connie) Mumford

    f.  Aishvary Patel; and

    g.  Jennifer Wakefield



## U.S. Securities and Exchange Commission

## <u>Data Delivery Standards</u>

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.***

General Instructions................................................................................................................. 1

Delivery Formats ..................................................................................................................... 2

   I.  Imaged Productions............................................................................................................3

      1.  Images................................................................................................................. 3

      2.  Image Cross-Reference File ................................................................................ 3

      3.  Data File ............................................................................................................. 3

      4.  Text.................................................................................................................... 3

      5.  Linked Native Files............................................................................................ 3

  II.  Native File Productions without Load Files ...................................................................... 4

  III.  Adobe PDF File Productions ........................................................................................... 4

  IV.  Audio Files....................................................................................................................... 4

  V.  Video Files ....................................................................................................................... 4

  VI.  Electronic Trade and Bank Records.................................................................................. 4

  VII. Electronic Phone Records ................................................................................................ 4

  VIII. Audit Workpapers .......................................................................................................... 5

  IX. Mobile Device Data ........................................................................................................ 5

**General Instructions**

Due to COVID-19 restrictions the current, temporary mailing address for all <u>physical productions</u> sent to the SEC is:
**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR)  during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF).  If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

Rev 8/2021

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
   a. Case number, case name and requesting SEC staff member name
   b. A list of each piece of media included in the production with its unique production volume number
   c. A list of custodians, identifying the Bates range for each custodian
   d. The time zone in which the emails were standardized during conversion
   e. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 20 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive, Microsoft Office 365 or Dropbox.
14. Productions containing BSA or SAR material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SAR material. Any BSA or SAR material produced should be segregated and appropriately marked as BSA or SAR material, or should be produced separately from other case related material.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

   **\*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.\***

U.S. Securities and Exchange Commission
Data Delivery Standards

**Delivery Formats**

**I. Imaged Productions**

The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files.

1. **Images**
   a. Black and white images must be 300 DPI Group IV single-page TIFF files
   b. Color images must be produced in JPEG format
   c. File names cannot contain embedded spaces or special characters (including the comma)
   d. Folder names cannot contain embedded spaces or special characters (including the comma)
   e. All image files must have a unique file name, i.e. Bates number
   f. All image files must be endorsed with sequential Bates numbers in the lower right corner of each image
   g. The number of image files per folder should not exceed 2,000 files
   h. Excel spreadsheets should have a placeholder image named by the Bates number of the file
   i. AUTOCAD/photograph files should be produced as a single page JPEG file

2. **Image Cross-Reference File**
   The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:
   *ImageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount*

3. **Data File**
   The data file (.DAT) contains all of the fielded information that will be loaded into the database.
   a. The first line of the .DAT file must be a header row identifying the field names
   b. The .DAT file must use the following *Concordance®* default delimiters:
      Comma ¶ ASCII character (020)
      Quote þ ASCII character (254)
   c. If the .DAT file is produced in Unicode format it must contain the byte order marker
   d. Date fields should be provided in the format: mm/dd/yyyy
   e. Date and time fields must be two separate fields
   f. The time zone must be included in all time fields
   g. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
   h. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. Do not include the text in the .DAT file.
   i. For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
   j. BEGATTACH and ENDATTACH fields must be two separate fields
   k. A complete list of metadata fields is available in **Addendum A** to this document

4. **Text**
   Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within their same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

5. **Linked Native Files**
   Copies of original email and native file documents/attachments must be included for all electronic productions.
   a. Native file documents must be named per the FIRSTBATES number
   b. The full path of the native file must be provided in the .DAT file for the LINK field
   c. The number of native files per folder should not exceed 2,000 files

**II.   Native File Production without Load Files**

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, native email files (.PST or .MBOX) may be produced. A separate folder should be provided for each custodian.

**III.   Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.

1. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

**IV.   Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

1) Caller Name:          Caller's name or account/identification number
2) Originating Number:   Caller's phone number
3) Called Party Name:    Called party's name
4) Terminating Number:   Called party's phone number
5) Date:                 Date of call
6) Time:                 Time of call
7) Filename:             Filename of audio file

**V.   Video Files**

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**VI.   Electronic Trade and Bank Records**

When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**VII.  Electronic Phone Records**

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
   a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column.  For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

**VIII. Audit Workpapers**

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. The laptop must have printing capability, and when possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

**IX. Mobile Device Data**

Before producing mobile device data (including but not limited to text messages) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format.

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
| --- | --- | --- |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email:  (empty) Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email:  (empty) Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email:  (empty) Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email:  (empty) Native: Time the document was created including time zone **This data must be a separate field and cannot be |
| DATE_MOD | 10/12/2010 | Email:  (empty) Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email:  (empty) Native: Time the document was last modified including the time zone **This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/2010 | Email:  (empty) Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email:  (empty) Native: Time the document was last accessed including the time zone **This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/2010 | Email:  (empty) Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email:  (empty) Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email:  original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email:  Unique Message ID Native: (empty) |

7

U.S. Securities and Exchange Commission
Data Delivery Standards

| | | |
|---|---|---|
| HEADER | Return-Path:<br><example_from@dc.edu><br>X-SpamCatcher-Score:1[X]<br>Received:from[136.167.40.119]<br>(HELO dc.edu)<br>by fe3.dc.edu (CommuniGate<br>Pro SMTP4.1.8)<br>with ESMTP-TLS id 61258719<br>for example_to@mail.dc.edu;<br>Mon, 23 Aug 2004 11:40:10 -<br>0400<br>Message-ID:<br><4129F3CA.2020509@dc.edu><br>Date: Mon, 23 Aug 2005<br>11:40:36 -400<br>From: Taylor Evans<br><example_from@dc.edu><br>User-Agent:Mozilla/5.0<br>(Windows;U; Windows NT 5.1;<br>en-US;rv:1.0.1)<br>Gecko/20020823 Netscape/7.0<br>X-Accept-Language:en-us,en<br>MIME-Version:1.0<br>To: Jon Smith<br><example_to@mail.dc.edu><br>Subject:Business Development<br>Meeting<br>Content-Type:<br>text/plain;charset=us-ascii;<br>format=flowed<br>Content-Transfer-Encoding:7bit | Email: The email header information<br>Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a069<br>8aff95c<br>2fcab58712467eab4004583eb<br>8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,

Rev 8/2021

## ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable


For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

Rev 8/2021

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record*.  Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel*.  You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability*.  Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury*.  Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--
>
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare,

SEC 1662 (09-21)

depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.   *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E.  Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena*. The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F.  Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena*. If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G.  Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H.  Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (1) the SEC suspects or has confirmed that there has been a breach of the system of records, (2) the SEC has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, the SEC (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

2. To other Federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the Federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the Federal securities laws.

5. In any proceeding where the Federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other Federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a Federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a Federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 through 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100 through 1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the Federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 through 200.735-18, and who assists in the investigation by the Commission of possible violations of the Federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the Federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the Federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection,

including collection by administrative offset, Federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

23. To another Federal agency or Federal entity, when the SEC determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

IN AND FOR LEE COUNTY, FLORIDA

**CASE NUMBER(S):**     23-014693CF

**STATE OF FLORIDA vs.**

<u>**French, Michael Jay**</u>
Defendant / Minor Child

### APPLICATION FOR CRIMINAL INDIGENT STATUS

[x] I AM SEEKING THE APPOINTMENT OF THE PUBLIC DEFENDER

OR

[ ] I HAVE A PRIVATE ATTORNEY OR AM SELF-REPRESENTED AND SEEK DETERMINATION OF INDIGENCE STATUS FOR COSTS

<u>**Notice to Applicant:**</u> The provision of a public defender / court appointed lawyer and costs / due process services are not free. A judgement and lien may be imposed against all real or personal property you own to pay for legal and other services provided on your behalf or on behalf of the person for whom you are making this application. There is a $50.00 fee for each application filed. If the application fee is not paid to the Clerk of the Court within 7 days, it will be added to any costs that may be assessed against you at the conclusion of the case. If you are a parent / guardian making this affidavit on behalf of a minor or tax-dependent adult, the information contained in this application must include your income and assets.

1. **I have <u>1</u> dependants.** *(Do not include children not living at home and do not include a working spouse or yourself)*
2. **I have a take home income of $0.00** paid
   *(Take home income equals salary, wages, bonuses, commissions, allowances, overtime, tips and similiar payments, **minus** deductions required by law and other court ordered support payments)*
3. **I have other income** paid    : *(Circle "Yes" and fill in the amount if you have this kind of income, otherwise circle "No")*

| | | | | | | |
|---|---|---|---|---|---|---|
| Social Security benefits | Yes | $0.00 | No X | Veterans' benefit | Yes | $0.00 | No X |
| Unemployment compensation | Yes | $0.00 | No X | Child support or other regular support from family members / spouse | Yes | $0.00 | No X |
| Union Funds | Yes | $0.00 | No X | | | |
| Workers compensation | Yes | $0.00 | No X | Rental income | Yes | $0.00 | No X |
| Trusts or gifts | Yes | $0.00 | No X | Dividends or interest | Yes | $0.00 | No X |
| Retirement / pensions | Yes | $0.00 | No X | Other kinds of income not on the list | Yes | $0.00 | No X |

4. **I have other assets**: *(Circle "yes" and fill in the of the property, otherwise circle "No")*

| | | | | | | |
|---|---|---|---|---|---|---|
| Cash | Yes X | $1,000.00 | No | Savings | Yes | $0.00 | No X |
| Bank account(s) | Yes X | $1,000.00 | No | Stocks / bonds | Yes | $0.00 | No X |
| Certificate of deposit or money market account(s) | Yes | $0.00 | No X | *Equity in homestead real estate | Yes | $0.00 | No X |
| *Equity in Motor vehicle(s) | Yes | $0.00 | No X | *Equity in non-homestead real estate *include expectency of an interest in such property | Yes | $0.00 | No X |
| *Equity in boats / other tangible property | Yes | $0.00 | No X | | | |

5. **I have a total amount of liabilities and debts in the amount of  $0.00**
6. **I receive:** *(Circle "Yes" or "No")*

| | | | |
|---|---|---|---|
| Temporary Assistance for Need;y Families-Cash Assistance | Yes | $0.00 | No X |
| Poverty- related veterans' benefits | Yes | $0.00 | No X |
| Supplemental Security income (SSI) | Yes | $0.00 | No X |

7. **I have been released on bail in the amount of $0.00**     [ ] Cash    [ ] Surety    Posted by:  [ ] Self  [ ] Family  [ ] Other

A person who knowingly provides false information to the clerk of the court in seeking a determination of indigent status under s. 27.52, F.S. commits a misdemeanor of the first degree, punishable as provided in s. 775.082, F.S. **I attest that the information provided on this Application is true and accurate.**

<u>03/02/2023</u>
Signed on

<u>████1983</u>
Year of Birth

<u>3285</u>
Last four digits of Driver's License or ID Number

Signature of Applicant for Indigent Status

Print full name: <u>Michael Jay French</u>
Address: ████████  PENDLETON, SC ████
Phone:                              Cell Phone:
Email Address: ████@gmail.com

### CLERK'S DETERMINATION

Based on the information in the Application, I have determined the applicant to be   [X] **Indigent**   [ ] **Not Indigent**

[X] The Public Defender is hereby appointed to the case listed above until relieved by the Court.

Dated this: March 02, 2023

This form was completed with the assistance of :

Clerk of the Circuit Court

/ Taylor Halperin /
Taylor Halperin
Clerk/Deputy Clerk/Other authorized person

**EXHIBIT O**

**APPLICANTS FOUND NOT INDIGENT MAY SEEK REVIEW BY ASKING FOR A HEARING TIME. Sign here if you want the Judge to review the clerk's decision of not indigent.** _____

Florida Supreme Court Form 3 984, Updated 5/1/19

# NON-PUBLIC

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

November 9, 2022

| |
|---|
| **In the Matter of**<br><br>**MJF Holdings, LLC**,<br><br>**(A-04041)** |

**ORDER DIRECTING PRIVATE INVESTIGATION AND DESIGNATING OFFICERS TO TAKE TESTIMONY**

## I.

The Commission has information that tends to show that from at least July 2020 through present:

A.       MJF Holdings, LLC ("MJF Holdings") is a Nevada limited liability company with its principal place of business in Greenville, South Carolina.  MJF Holdings and its securities are not registered with the Commission in any capacity.

B.       In possible violation of Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), MJF Holdings, its officers, directors, employees, partners, subsidiaries, and/or affiliates, and/or other persons or entities, directly or indirectly, may have been or may be offering to sell, selling, and delivering after sale to the public, or may have been or may be offering to sell or to buy through the use or medium of any prospectus or otherwise, certain securities, including, but not limited to promissory notes, as to which no registration statement was or is in effect or on file with the Commission, and for which no exemption was or is available.  While engaged in the above-described activities, such persons or entities, directly or indirectly, may have been or may be making use of any means or instruments of transportation or communication in interstate commerce or of the mails.

C.       In possible violation of Section 17(a) of the Securities Act, MJF Holdings, its officers, directors, employees, partners, subsidiaries, and/or affiliates, and/or other persons or entities, directly or indirectly, in the offer or sale of certain securities, may have been or may be employing devices, schemes, or artifices to defraud, obtaining money or property by means of untrue statements of material fact or omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were or are made, not misleading, or engaging in transactions, practices or courses of business which operated, operate, or would operate as a fraud or deceit upon the purchaser.  As part of or in connection with these activities, such persons or entities, directly or indirectly, may have been or may be, among other things, making false statements of material fact and omitting to disclose material facts concerning, among other things, how investor funds would be used and/or misappropriating investor funds.  While engaged in the above-described activities, such persons or entities,

EXHIBIT
P

directly or indirectly, may have been or may be using any means or instruments of transportation or communication in interstate commerce or using the mails.

D.      In possible violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder, MJF Holdings, its officers, directors, employees, partners, subsidiaries, and/or affiliates, and/or other persons or entities, directly or indirectly, in connection with the purchase or sale of certain securities, may have been or may be employing devices, schemes, or artifices to defraud, making untrue statements of material fact or omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were or are made, not misleading, or engaging in acts, practices or courses of business which operated, operate, or would operate as a fraud or deceit upon any person.  In connection with these activities, such persons or entities, directly or indirectly, may have been or may be, among other things, making false statements of material fact and omitting to disclose material facts concerning, among other things, how investor funds would be used and/or misappropriating investor funds.  While engaged in the above-described activities, such persons or entities, directly or indirectly, may have been or may be making use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange.

## II.

The Commission, deeming such acts and practices, if true, to be possible violations of Sections 5(a), 5(c) and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, finds it necessary and appropriate and hereby:

ORDERS, pursuant to the provisions of Section 20(a) of the Securities Act and Section 21(a) of the Exchange Act that a private investigation be made to determine whether any persons or entities have engaged in, or are about to engage in, any of the reported acts or practices or any acts or practices of similar purport or object; and

2

FURTHER ORDERS, pursuant to the provisions of Section 19(c) of the Securities Act and Section 21(b) of the Exchange Act that for purposes of such investigation, Nekia Hackworth Jones, Justin C. Jeffries, Thomas B. Bosch, Grant Mogan, Andrew Mason, Tiffany Kunkle, Yolanda L. Ross, Debbie Hampton, Mark Harrison, and Douglas Dykhuizen, and each of them, are hereby designated as officers of the Commission and are empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the inquiry, and to perform all other duties in connection therewith as prescribed by law.

For the Commission, by the Division of Enforcement, pursuant to delegated authority.[1]

Gurbir S. Grewal
Director, Division of Enforcement

Date Approved:  November 9, 2022

---

[1] 17 CFR 200.30-4(a)(13); Public Law 87-592.

# NON-PUBLIC

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**
February 21, 2023

| In the Matter of | |
| --- | --- |
| MJF Holdings, LLC, | **SUPPLEMENTAL ORDER** |
| | **DESIGNATING AN ADDITIONAL** |
| (A-04041) | **OFFICER** |

IT IS ORDERED that the order of the Commission adopted on November 9, 2022, authorizing a private investigation of the above captioned matter, based upon possible violations of the provisions of the federal securities laws, be and it is hereby amended by designating as an additional officer of the Commission, Kristin Murnahan.

For the Commission, by the Division of Enforcement, pursuant to delegated authority.[1]

Gurbir S. Grewal
Director, Division of Enforcement

Date Approved:   February 21, 2023

---

[1]  17 C.F.R. 200.30-4(a)(1); Public Law 87-592.

**EXHIBIT**
**Q**